[Doe *ex Dem.* Anniston City Land Co. v. Edmondson.]

# Doe *ex Dem.* Anniston City Land Co. *v.* Edmondson.

## *Common Law Action of Ejectment.*

1. *Ejectment; adverse possession; admissibility of evidence.*—In an action of ejectment, where the plaintiff bases his right of recovery upon adverse possession, it is not competent for a witness to state that the plaintiff or the agent or representative of the plaintiff exercised "such acts of ownership over the land [sued for] as the nature and character of the land was susceptible of."

2. *Same; same; same.*—In such a case, where an agent of the plaintiff testified as to his being employed by the plaintiff to overlook the latter's land and to prevent trespassing thereon, and that at the time of his employment the plaintiff gave him a map which showed the lands owned by the plaintiff, it is not competent for said witness to further testify that said map showed that the lands sued for were included in those owned by the plaintiff.

3. *Same; same; same.*—In an action of ejectment, where both the plaintiff and the defendant rely upon adverse possession as giving them title respectively, the value of the lands involved in the controversy is wholly immaterial; and evidence tending to show that said lands were worth more than the defendant had paid for them, is irrelevant, incompetent and properly excluded.

4. *Same; same; same.*—In such a case, the fact that the defendant, who lived near to the lands involved in the suit, was careful to see that timber upon his lands was not trespassed upon, is wholly irrelevant and immaterial to any issue involved, and is not admissible in evidence, even in connection with other evidence tending to show that the plaintiff's agent had cut timber from the lands sued for.

5. *Same; same; same.*—In an action of ejectment, a declaration by one who was formerly owner of the property sued for, made to his son, while not in possession, that he had sold and given possession of the land, is purely hearsay and inadmissible.

6. *Same; same; same.*—In an action of ejectment, the fragment of a deed under which one of the parties to the suit claims, which is identified by parol evidence, and the attesting wit-

[Doe *ex Dem.* Anniston City Land Co. v. Edmondson.]

nesses thereto are dead or can not be produced, and it appears therefrom that the lands involved in suit were conveyed to the grantor of the party seeking to introduce it, is admissible in evidence in connection with parol proof that the missing portion of the paper could not be found with the other papers of the grantee of said deed, or among those belonging to the party to the suit seeking to introduce it.

7. *Same; same; same.*—In an action of ejectment, where the plaintiff and the defendant each claim title by adverse possession, and it is shown that the lands involved in the suit were heavily timbered, and that timber was cut therefrom by a certain named person, for the purpose of burning charcoal for the plaintiff or the grantor of the plaintiff, it is competent for the defendant as a witness to testify that he gave such person permission to cut from the lands sued for such timber for the purposes designated; and it is no objection to the competency of the admissibility of such evidence that said person who had cut the timber was dead at the time of the trial.

8. *Same; same; same.*—In such a case, a deed from the defendant to a railroad company conveying a right of way across the land in dispute, is admissible in evidence as manifesting an act of ownership and as a circumstance tending to show the assertion of a claim of ownership on the defendant's part.

9. *Same; same; same.*—In an action of ejectment, where the plaintiff and the defendant each claim title by adverse possession, it is permissible for a witness to testify that many years before the trial the defendant brought to him the original patent to the lands involved in the suit; possession by the defendant of the original patent being a circumstance for the consideration of the jury tending to show the claim of ownership of the land by the defendant.

10. *Same; same; same.*—In an action of ejectment, it is competent for the widow of one of the persons through whom the defendant claimed, to testify that her husband purchased the land in dispute from the original entryman, giving the time of such purchase; and such testimony is not subject to the objection of being hearsay, when the statement is made by the witness as of her own personal knowledge.

11. *Ejectment; adverse possession; charge as to plaintiff's right of recovery.*—In an action of ejectment, where the plaintiff bases his right of recovery upon adverse possession, it is not error for the court in its oral charge to the jury to instruct them that "If the plaintiff has not proved adverse possession for 10 years, then it can not recover;" and further that "plaintiff must recover on the strength of its own right."

[Doe *ex Dem.* Anniston City Land Co. v. Edmondson.]

12. *Same; same; same.*—In order for the plaintiff to be entitled to recover in an action of ejectment, he must show a better title than the defendant has to the land in dispute; and the burden rests upon the plaintiff to make such proof. Therefore, a charge asserts a correct proposition and is properly given at the request of the defendant which instructs the jury "that if upon the evidence before them and the charge of the court they are unable to say that plaintiff has shown a better title than is shown by his evidence, that the plaintiff is not entitled to recover."

13. *Same; same; charge upon effect of evidence.*—In an action of ejectment, where the plaintiff claims title by adverse possession, it is not error for the court, at the request of the defendant, to instruct the jury that there is no evidence before them of any color of title to the land in dispute in the plaintiff or in either of the parties through whom the plaintiff claims, prior to the designated time; the record sustaining the predicate as to the facts stated.

14. *Same; same; charge as to right of recovery in common law ejectment.*—In a common law action of ejectment, where a number of demises are laid in different parties, charges which instruct the jury that if said designated parties had, prior to the commencement of the suit, conveyed away their title to the land in suit, then there can be no recovery on the demises laid in them respectively, assert a correct proposition and are properly given at the request of the defendant.

15. *Ejectment; adverse posession; charge as to excluding the period of the Civil War.*—In computing the statutory period of ten years necessary to complete the bar of the statute of limitations, and to give title by adverse possession, the period of the war between the States, between January 11, 1861, to September 21, 1865, must be excluded; and in an action of ejectment, where title is claimed by adverse possesion, a charge which so instructs the jury is properly given.

16. *Same; deed evidences only conveyance of grantor's title.*—A deed conveying certain described lands is evidence only of a conveyance by the grantor of such title as he may have had in the lands, and is not evidence of the fact that he had any title to said lands; and in an action of ejectment, where there are several deeds introduced in evidence, charges which so instruct the jury as to the said deeds so introduced in evidence are properly given.

17. *Adverse possession; charge invasive of province of the jury.*—In an action of ejectment, where the plaintiff and the defendant both set up title by adverse possession, and there is evidence

[Doe *ex Dem.* Anniston City Land Co. v. Edmondson.]

introduced from which the jury might have found that one of
the parties through whom plaintiff claimed title acquired
by adverse possession for a period of ten years by tacking his
possession on to that of his vendor, it is error for the court
at the request of the defendant to instruct the jury that the
evidence fails to show that such party, through whom the
plaintiff claimed, acquired no title to the land sued for by ad-
verse possession; such charge being invasive of the province
of the jury.

18. *Same; same; charge as to adverse possession.*—In such an
action, where there was evidence tending to show adverse pos-
session by defendant of the land sued for under color of title
for the statutory period necessary to give title, it is not error
for the court at the request of the defendant to instruct the
jury that if they should find that the defendant had adverse
possession of any portion of the lands sued for for the statu-
tory period, then he had adverse possession of the whole of
said land that was not actually occupied and held adversely
to him.

19. *Charge to the jury; not reversible error to give misleading
charge.*—The giving of a charge which may have a tendency
to mislead the jury, does not constitute a reversible error;
since the misleading tendency of such charge should be met
by the opposite party asking for an explanatory charge.

APPEAL from the City Court of Anniston.

Tried before the Hon. JAMES W. LAPSLEY.

This was a common law action of ejectment, brought
by the Anniston City Land Company against W. J. Ed-
mondson, for the southwest ¼ of the southwest ¼ of sec-
tion 31, township 15, range 8 west, in Calhoun county,
Alabama, and was instituted on February 20, 1897. In
the complaint the demises were laid in the following
persons: Benjamin Johnson, A. O. Stewart, A. L. Ty-
ler, Woodstock Iron Company, Anniston Land & Im-
provement Company, D. T. Parker and Cornelia A.
Parker, and the Anniston City Land Company. The de-
fendant pleaded the general issue.

On the trial of the case, the plaintiff introduced in
evidence a certificate of a patent to the lands sued for,
issued to Benjamin Johnson on December 1, 1852. This
patent also embraced 40 acres of lands immediately
north of the 40 acres sued for; the patent calling for

the west ½ of the southwest ¼ of section 31, township 15, range 8 west, in Calhoun county, Alabama. The 40 acres north of the 40 sued for were known and designated and referred to in the trial as the "Cyclone Forty."

The evidence tended to show that Benjamin Johnson cleared up and cultivated a part of the land in dispute some time in 1855 or 1856; that he moved upon the lands in 1862, and planted a crop upon the 80 acres of land which were patented to him, cultivating some land in each of the forties; that he built his house in the forty known as the "Cyclone Forty;" that he lived on said land until he moved to Randolph county in 1862, and that before moving to Randolph county, said Johnson stated to several members of his family that he had sold the land in dispute to the Oxford Iron Company. The testimony of the plaintiff further tended to show that the Oxford Iron Company succeeded Johnson in the posession of the lands involved in this controversy and commenced to cut timber on said lands and to make it into charcoal; that one Spradley who was the agent of the Oxford Iron Company went into possession of the house built by Johnson on the "Cyclone Forty" as soon as Johnson moved out of it, and to coal the timber off of said lands in the years 1863 and 1864. There was further testimony introduced by the plaintiff tending to show that the works of the Oxford Iron Company, together with its papers and records, were burned up in the spring of 1865 by Federal raiders, and that the records of Calhoun county which were sent to Talladega for safe keeping, in the spring of 1865, were also burned up by Federal raiders. The evidence for the plaintiff further tended to show that after the works of the Oxford Iron Company were burned up in the spring of 1865 said company remained in posession of the lands here sued for through its agents, until it sold out to the Woodstock Iron Company in 1874 or 1875. The plaintiff introduced in evidence deeds from all the individual stockholders of the Oxford Iron Company to the Woodstock Iron Company conveying the lands in dispute, and also introduced in evidence two certificates of redemption of the Woodstock Iron Company of land

sold as property of the Oxford Iron Company for delinquent taxes, in each of which certificates were included the land sued for in this action. These certificates of redemption were dated March 3, 1874. The evidence for the plaintiff further tended to show that the Woodstock Iron Company went into possession of said lands shortly after the execution of these certificates of redemption and exercised repeated and continuous acts of ownership upon said lands, claiming them as its own up to 1891 or 1892, and for many years kept a tenant on the Cyclone Forty; that the lands sued for in this action had not been in cultivation since the war and were not suitable for cultivation, but was what were known as wild lands until shortly before the commencement of this suit, when, in 1893, or 1894, W. J. Edmondson built a house on the lands sued for and placed a tenant therein, and that the person so placed upon the lands by Edmondson was the first person who had actually lived on the land sued for. The plaintiff then introduced in evidence a deed from the Woodstock Iron Company to the Anniston City Land Company conveying the lands sued for, and which was dated July 3, 1895. This deed was duly executed, acknowledged and recorded.

The testimony on the part of the defendant tended to show that one James Ford while living on some lands which had been sold him by Benjamin Johnson, worked a field located on the lands involved in this controversy in 1858 or 1859; that in 1868 said Ford sold the lands in dispute to one Ben Maddox, but no deed of said Ford, conveying said lands, was ever proven; that said Ben Maddox kept the lands in dispute for a few weeks and sold them to the defendant, W. J. Edmondson, and executed a deed conveying said lands, together with other lands to said Edmondson on December 4, 1868. This deed from Maddox and wife to Edmondson conveying the lands sued for was introduced in evidence. The testimony for the defendant further tended to show that after the purchase of said lands from Maddox, Edmondson exercised acts of ownership over them, such as cutting firewood, etc., and has continued to exercise such

acts of ownership up to the time of the institution of
the present suit, claiming to be the owner of said lands.
The defendant also introduced in evidence the original
patent that was issued to Benjamin Johnson for the
west½ of the southwest ¼ of section 31, township 15,
range 8 east, in Calhoun county, Alabama. And the de-
fendant testified that this original patent was given to
him by Maddox at the time said Maddox delivered to
him his deed to the lands sued for.

. During the progress of the trial, the plaintiff offered
to prove by one Robert Zuber, who was a witness for the
plaintiff, that he, witness, acting as agent of the Wood-
stock Iron Company, from 1878 to 1887, exercised such
acts of ownership over the lands in dispute as it was
susceptible of. The court refused to allow the plaintiff
to make this proof, and to this ruling the plaintiff duly
excepted. The plaintiff also offered to prove by one
George Noble that during the time he was connected
with the Woodstock Iron Company, from 1885-1887,
said company exercised such acts of ownership and con-
trol over the lands in dispute as it was susceptible of.
Upon the objection of the defendant the court refused to
allow the plaintiff to make said proof, and to this rul-
ing the plaintiff duly excepted.

During the examination of the said witness, Robert
Zuber, who it was shown was the "woods boss" of the
Woodstock Iron Company from 1878 to 1887, the pain-
tiff offered to prove by said witness that at the time of
the commencement of his connection with the Wood-
stock Iron Company in 1878 as the woods boss, said
company gave him a map of the lands owned by it, which
lands he was required to look after for said company
and to keep off trespassers, etc., and that the lands in
dispute were on the map given witness as a part of the
lands to be looked after by him for the Woodstock Iron
Company. The court refused to allow this testimony
to be introduced, and the plaintiff duly excepted.

There was evidence introduced by the plaintiff tend-
ing to show that the Woodstock Iron Company had cut
and hauled some saw logs off of the land involved in
this controversy to its saw mill in the years 1875, 1876,

1877; that during this time the defendant Edmondson was shown to reside within three-quarters of a mile on the land sued for, and that said lands were in full sight of the public road leading from Edmondson's house to Anniston. During the examination of one Mat Clements as a witness, the plaintiff offered to prove by said witness "that defendant Edmondson was very careful to see that the timber on his lands was not trespassed upon." Upon the objection of the defendant the court refused to permit the witness Clements to testify to this fact, and to this ruling the plaintiff duly excepted.

Upon its being shown that the defendant had paid Maddox 40 cents per acre for the lands purchased by him from Maddox, including the lands sued for, the plaintiff offered to prove by one Sprague that the lands in the vicinity of the lands involved in this litigation, as well as the lands sued for, were worth four or five dollars per acre at the time Maddox executed the deed to Edmondson. The court refused to permit the plaintiff to make this proof by the witness Sprague, and to this ruling the plaintiff duly excepted.

The plaintiff offered to prove by James T. Johnson, the son of Benjamin Johnson, that his father was the original patentee from the government, and told him, the witness, at his home in Randolph county, Alabama, in 1863, that he, Benjamin Johnson, had sold and given possession of the lands now sued for to the Oxford Iron Company. Upon objection of the defendant, the court refused to allow the introduction of this testimony, and to this ruling the plaintiff duly excepted.

During the examination of Ben Maddox as a witness he testified that at the time he purchased the land from James Ford, Ford delivered the original patent to him, which he delivered to Edmondson at the time he sold the lands to Edmondson; that when Ford sold to him he gave him a paper writing, and that the paper marked "B" was the said paper or part of it. The plaintiff moved to exclude this testimony, in reference to the paper marked "B" on the ground that it was irrelevant, illegal and incompetent. The defendant Edmondson

as a witness testified that when he purchased the lands from Maddox, Maddox gave him a deed which was introduced in evidence, and at the same time gave him the paper marked "B"; that he had found the paper marked "B" which was only a part of the instrument originally given him by Maddox, and he did not know what had become of the rest of the paper; "that he had searched diligently for it among his own papers and among Maddox's papers, looking over all the old scraps; that the paper B had James Ford's and Margaret Ford's names to it, and had witnesses to it, one of whom was Benjamin Johnson." This paper marked B was in words and figures as follows: "The S. E. ¼ of the N. E. ¼ of section —, township 15, range 7. Also the N. W. ¼ of the S. E. ¼ of section 36, township 15, range 7; also S. W. ¼ of S. W. ¼ of section 31, township 15, range 8 east, in the Coosa land district, to have and to hold to said C. B. Maddox his, together with all the rights and privileges and appurtenances thereunto belonging or in otherwise appertains, and first party and his heirs, executors and administrators do and by the presents will forever warrant and defend the said title from him, his heirs and from . . . . . . . . . ." The defendant offered this paper marked B. in evidence. The plaintiff objected to the introduction thereof in evidence, and moved to exclude it, upon the same grounds that it was incompetent and irrelevant, that there was higher and better evidence as to what the deed contained, and that there was no sufficient evidence of the existence of any such deed, or that the same had been lost or mislaid. The court overruled the objection and allowed the paper to be introduced in evidence, and to this ruling the plaintiff duly excepted. The plaintiff also moved to exclude the testimony of the witness Edmondson that said paper marked B. had the names of James and Margaret Ford signed to it, and duly excepted to the court's overruling his motion.

During the progress of the trial, it was stated by some of the witnesses that one Eli Costner had cut some of the timber from off of the lands sued for, and converted it into charcoal some time in 1878 or 1879. Costner was shown to be dead at the time of the trial, and it was

further shown that he was a collier working for the Woodstock Iron Company at the time he cut and converted this timber into charcoal on the lands in dispute, "but was not the agent for the Woodstock Iron Company."

The defendant Edmondson, during his examination, testified that said Costner got permission from him, Edmondson, to cut said timber from the lands in dispute, and to burn the charcoal for the Woodstock Iron Company. The plaintiff objected to the introduction of this testimony, upon the ground that Costner was shown to be dead, and that at the time of the alleged transaction was acting as agent or in a representative capacity for the Woodstock Iron Company. The court overruled the objection, and the defendant excepted.

The plaintiff introduced in evidence a deed from the defendant Edmondson to the Alabama Mineral Railroad Company to a right of way over a corner of the land involved in this suit, which deed was dated January 7, 1892. The plaintiff objected to the introduction of this deed in evidence, upon the ground that it was incompetent and irrelevant, and did not tend to prove any notorious act of ownership on the part of Edmondson, the defendant. The court overruled this objection, permitted the deed to be introduced in evidence, and to this ruling the plaintiff duly excepted.

There was no evidence before the court that the original patentee, Benjamin Johnson, had ever sold the lands in dispute to James Ford, except the deposition of Margaret Ford, the latter's wife. The deposition of said Margaret Ford, who was shown to be the widow of said James Ford, was introduced in evidence by the defendant. The plaintiff objected and moved the court to strike out from the deposition that portion thereof referring to the purchase of the land sued for by her husband, Benjamin Johnson, which is copied in the opinion, on the ground that it was hearsay. The court overruled the motion, and to this ruling the plaintiff duly excepted.

W. M. Hames, a witness for the defendant, testified "that defendant Edmondson brought the original pat-

ent to the lands in controversy to him at Jacksonville, some time about 1870 or 1872; a few weeks before the Oxford Iron Works were sold under Spradley's execution." The plaintiff objected to this evidence and moved to exclude it upon the ground that it was incompetent, illegal and irrelevant. The court overruled the objecttion and motion, and to this ruling the plaintiff duly excepted.

The portions of the court's oral charge to the jury, to which the plaintiff separately excepted, are copied in the opinion. The plaintiff requested the court to give to the jury two written charges, and separately excepted to the court's refusal to give each of them as asked, but under the opinion on the present appeal, it is unnecessary to set forth these charges at length.

The court at the request of the defendant gave to the jury, among others, the following written charges, to the giving of each of which the plaintiff separately excepted: (3.) "The court charges the jury that if upon the evidence before them and the charge of the court they are unable to say that plaintiff has shown a better title than defendant has shown by his evidence, that the plaintiff is not entitled to recover." (6.) "The court charges you that there is no evidence before you of any color of title in the plaintiff or in the Oxford Iron Company or of any one subsequent to the Woodstock Iron Company, through whom plaintiff claims prior to the year 1874, to the land in dispute." (10.) "The court charges the jury that if they find from the evidence that Ben Johnson had conveyed away his whole title to the land in controversy before this action was brought, that plaintiff is not entitled to recover on the alleged demise of Ben Johnson." (11.) "The court charges the jury that if they find from the evidence under the charge of the court, that the Oxford Iron Company had conveyed away its whole title to the land in controversy before this action was brought, plaintiff can not recover on the alleged demise of the Oxford Iron Company." (15.) "The court charges the jury that if they find from the evidence, under the charge of the court that Woodstock Iron Company had conveyed away its whole title to the land in controversy before this action

was brought, that plaintiff is not entitled to recover on the alleged demise of Woodstock Iron Company." (20.) "The court charges the jury that if they find from the evidence that at the time of the execution of the deed or deeds introduced in evidence that were executed to the Anniston Land and Improvement Company, that the defendant Edmondson was in the notorious, adverse possession of the land in dispute, under color and claim of title, and claiming it as his own, that plaintiff can not recover on the alleged demise of the Anniston City Land and Improvement Company." (26.) "The court charges the jury that in the consideration of the question of adverse possession they must exclude the period of time from January 11, 1861, to September 21, 1865." (28.) "The court charges you that the deed of Benjamin Craig to Woodstock Iron Company, in evidence before you, is no evidence that Benjamin Craig or any one else had any right, title or interest in the lands in dispute in this suit." (29.) "The court charges you that the paper writings, or written instruments executed by Frey to Woodstock, introduced by the plaintiff and in evidence before you, is no evidence that said Campbell or Ferguson or Fry, or any one else had any right, title or interest to convey in the lands in controversy in this suit." (32.) "The court charges you that the deed of Wiley and wife to Jones, introduced in evidence by the plaintiff, is no evidence that Wiley and wife, or either of them, or any one else, had any title or interest in the lands in controversy." (34.) "The court charges you that the deed of McEwan to Woodstock, in evidence before you, is no evidence that said McEwan, or any one else, had any title, right or interest in the lands sued for in this action." (35.) "The court charges the jury that the evidence fails to show that the Oxford Iron Company ever acquired any title to the land sued for by adverse possession." (36.) "The court charges the jury that if they find from the evidence that defendant has from the latter part of December, 1868, up to the 20th of February, 1897, had adverse possession of any portion of the land sued for, that then he had adverse possession of the whole of it, that was not actually oc-

cupied and held adversely to him, and that plaintiff
would not be entitled to recover any portion of it, unless
the jury find from the evidence that plaintiff has ac-
quired title by adverse possession." (38.) "The court
charges the jury that if they believe from the evidence
that Edmondson was in adverse possession of the land
sued for at the time the deeds offered in evidence by the
plaintiff were made, then said deeds are void and con-
veyed no title to the land sued for." (41.) "The court
charges the jury that it is wholly immaterial what Mad-
dox paid Ford, or what Edmondson paid Maddox for
the land sued for, if the defendant has held the land
sued for adversely for more than ten years before the
commencement of this suit." (42.) "The court charges
the jury that it is wholly immaterial what Maddox paid
James Ford, or what Edmondson paid Maddox for the
land sued for, unless plaintiff has acquired a title to it
by adverse possession."

There were verdict and judgment for the defendant.
The plaintiff appeals, and assigns as error the several
rulings of the trial court to which exceptions were re-
served.

JOSEPH J. WILLETT, for appellant.—The court erred
in refusing to permit the witnesses Zuber and Noble to
state that the Woodstock Iron Company itself, or
through its agent, had exercised such acts of ownership
and control over the land in dispute as it was suscepti-
ble of. Such testimony was the statement of a collect-
ive fact, and was admissible in evidence.—*Woodstock
Iron Co. v. Roberts,* 87 Ala. 437; *Steiner Bros. v. Traum,*
98 Ala. 315.

It was competent for the witness Zuber to testify that
the map given him showed that the Woodstock Iron
Company owned the lands in dispute. This map was col-
lateral to the issues in the case. It was neither title nor
the evidence of title, and the fact sought to be testified
to came up incidentally and collaterally. "When a writ-
ing is mentioned incidentally or as collateral merely to
issues involved, the witness may give secondary evi-
dence of its contents."—*Smith v. Dinkelspiel,* 91 Ala.
528; *Brown v. State,* 63 Ala. 97; *Torrey v. Burney,* 113.

Ala. 503; *Ware & Co. v. Morgan,* 67 Ala. 451; *Winslow v. State,* 76 Ala. 42.

The court erred in permitting the defendant Edmondson to testify that he gave Costner permission to cut and coal timber on the land in dispute at the time the testimony showed he was engaged in making the charcoal for the Woodstock Iron Company, who was the grantor of the plaintiff. Costner was shown to be dead and it was further shown that he was in the employment of the Woodstock Iron Co.—Code of 1896, § 1794; *Warton v. Strain,* 82 Ala. 311; *Mobile Sav. Bank v. McDonnell,* 87 Ala. 736. This exclusion as to a transaction with a deceased agent extends to corroborative, strengthening or weakening testimony.—*Miller v. Cannon,* 84 Ala. 59; *Tisdale v. Maxwell,* 58 Ala. 40; *Killen v. Lide,* 65 Ala. 505; *Dismukes v. Tolson,* 67 Ala. 386.

The portions of the oral charge excepted to by the plaintiff were erroneous. They required the plaintiff to have a perfect title notwithstanding the defendant's might be as weak as water, and such charge is not a correct statement of the law. "Plaintiff need not have a perfect title in ejectment, it is sufficient if it is better than the defendant's."—*Garrett v. Lyle,* 27 Ala. 586; *Higdon v. Kennemer,* 120 Ala. 193.

The court erred in the charge No. 3 in writing, requested by the defendant. Before plaintiff was entitled to recover it was not necessary that the jury say that the plaintiff had shown a better title than the defendant; it was only necessary that they should be *reasonably satisfied* from the evidence that plaintiff's title was better than defendant's.—*Torrey v. Burney,* 113 Ala. 496.

Charge No. 10 requested by the defendant was certainly erroneous. It asserts that if Ben Johnson had conveyed away his title to the land before this action was brought that the plaintiff was not entitled to recover on the demise of Ben Johnson. This charge is not a correct statement of the law if Edmondson or any of his vendors was in posession of the land at that time which he claims to be the case, and which was one of the disputed points in the case.—*Pearson v. King,* 99 Ala. 126; *Harvey v. Carlisle,* 23 Ala. 635. This criticism is

also true as to charges Nos. 11 and 15 requested by the defendant. A charge predicated on part of the facts, leaving out other facts, from which the jury might draw different inference is erroneous and should not be given.—*Murray v. Hoyle,* 97 Ala. 588.

Charge No. 35 in erroneous in invading the province of the jury.

Charge No. 36 requested by defendant is erroneous in ignoring the claim of ownership. To create title by adverse possession there must not only be adverse posession, but it must be accompanied with claim of ownership.—*Murray v. Hoyle,* 97 Ala. 588; *Same case,* 92 Ala. 559; *Smith v. Roberts,* 62 Ala. 83.

MATTHEWS & WHITESIDE, and E. H. HANNA, *contra.* The testimony of the defendant that he gave Costner, who was cutting timber and converting it into charcoal for the Woodstock Iron Company, permission to do so, was relevant, competent and admissible. It showed an act done on the land by a third person with the permission of the defendant, and was admissible to support his claim of title by adverse title.—*Goodson v. Brother, Admr.,* 111 Ala. 589; *Woods v. Brewer,* 73 Ala. 259. It was no objection to such testimony that the said Costner was dead.—*Key v. Jones,* 52 Ala. 238; *Boykin v. Smith,* 65 Ala. 299; *Miller v. Cameron,* 84 Ala. 59.

The court did not err in giving the several charges requested by the defendant.—*Lipscomb v. McClellan,* 72 Ala. 152; *Regan v. Kilpatrick,* 66 Ala. 332; *Burks v. Mitchell,* 78 Ala. 61; *Clements v. Hays,* 76 Ala. 281; *Green v. Jordan,* 83 Ala. 286.

DOWDELL, J.—Adverse possession of the land in dispute, for the statutory period, was relied upon by the plaintiff for recovery, and by the defendant as a defense. It was the material and vital issue in the case. The assignments of error relate to the rulings of the city court upon the introduction of evidence, and upon instructions given by the court to the jury. Except as to opinion evidence by experts, it is a cardinal rule of evidence that a witness cannot state his opinion or conclusion on facts, but must state the facts themselves,

leaving the court or jury trying the case to draw the conclusions. The statement by a witness of a collective fact is permissible, leaving the details, or facts which go to make up the collective fact, to be drawn out on cross examination, if desirable, by the opposite party. The statement of the witnesses Zuber and Noble, that "such acts of ownership were exercised over the land as the nature and character of the land was susceptible of," was not a shorthand rendering of the facts, or the statement of a collective fact, but a mere opinion or conclusion of the witness. With a description of the land and a statement of the facts relied on as constituting acts of ownership, the court or jury might well draw a different conclusion from that contained in the statement offered in evidence. The court committed no error in sustaining the defendant's objection.

Nor did the court commit any error in not permitting the witness Zuber to testify as to the contents of the map given him by the Woodstock Iron Co. The tendency of this evidence was to show an assertion by the Woodstock Iron Co. of a claim of ownership of the land. A claim of ownership was an essential element of adverse possession. This evidence was pertinent and relevant, and not merely incidental or collateral, to the issue between the parties. The map was the highest and best evidence of the lands contained in it, and in the absence of a proper predicate, secondary evidence of its contents was inadmissible.

The value of the land in dispute was wholly immaterial, and the court properly sustained the defendant's objection to the testimony offered by the plaintiff as to value.

That the defendant was careful to see that timber on his land was not trespassed upon was irrelevant, and could shed no light on the question of adverse possession of the particular land the subject-matter of the controversy. There was no error in the court's refusing to let the witness, Mat Clements, testify to that effect, against defendant's objection.

The declaration made by Ben Johnson to his son James F. that he had sold and given possession of the

land in dispute to the Oxford Iron Co. was purely hearsay evidence and inadmissible.

There was no error in the admission in evidence of the paper marked "B." in connection with the parol explanatory evidence. A sufficient predicate was laid as to the missing portion of the paper "B." for the introduction of secondary evidence as to its contents. Ben Johnson was one of the attesting witnesses to this paper and he was dead, and so far as the bill of exceptions discloses the other attesting witness was not known. Under this state of the case, there was no error in calling other witnesses, than the subscribing witnesses, to prove the contents of the paper.

It was competent for the defendant Edmondson to testify to the fact, that he gave one Costner permission to cut timber on the land in dispute, for the purpose of burning coal for the Woodstock Iron Co. This evidence was relevant.—*Goodson v. Brothers, Admr.*, 111 Ala. 589. The fact that Costner was dead, did not affect the competency of Edmondson as a witness, the estate of Costner being in no wise interested in the result of the suit, and it is stated in the record that Costner was not an agent of the Woodstock Iron Co.

The deed by Edmondson to the Alabama Mineral Railroad Co. of a right of way across the land in dispute was an act of ownership and a circumstance tending to show the assertion of a claim of ownership on the part of Edmondson, and to that end was relevant and admissible.

There was no error in refusing to exclude the evidence of the witness Hames "that the defendant Edmondson brought the original patent to the land to him in Jacksonville, Ala., in 1870 or 1872, a few weeks before the Oxford Iron Works were sold under Spradley's execution." The possession by the defendant of the original patent to the land was a circumstance competent for the consideration of the jury on the line of claim of ownership of the land by the defendant.

The objection to that portion of the deposition of Margaret Ford, wherein she stated that her husband, James Ford "bought this land (the land in dispute) from Ben Johnson in about 1858. It was either in 1858

or 1859 that he bought it. I don't recollect the exact year, but it was somewhere along in there," was properly overruled on the ground stated in the objection, namely, that it was hearsay. The statement is made as of her own personal knowledge of the transaction, and nothing to indicate that it was hearsay. Nor was there any evidence that there was any deed or other written evidence of the transaction deposed to.

The plaintiff's right of recovery was based solely upon title by adverse posession. The court in its oral instruction to the jury among other things charged the jury that, "if plaintiff has not proved adverse possession for ten years then it cannot recover," and furthermore, that "plaintiff must recover on the strength of its own right." These portions of the oral charge were excepted to by the plaintiff, and are here assigned as error. It is insisted in argument that this charge required the plaintiff to show a perfect title. We do not so construe the charge. The plaintiff relied upon title by adverse possession, and proof of adverse possession for a period short of ten years would not authorize a recovery. The charge stated the law correctly as applicable to a right of recovery based on adverse possession. That the "plaintiff must recover on the strength of his own right" is also a correct statement of the law. "The strength of his own right," means no more than the strength of his own title. His title is the basis of his right of recovery, and consequently the strength of his right, is the strength of his title.

The action of the court in refusing the two written charges requested by the plaintiff, though insisted on in argument as error, cannot be considered by this court, the same not having been assigned as error on the record.

The written charges given at the request of the defendant, and here assigned as error, are numbered 3, 6, 10, 11, 15, 20, 26, 28, 29, 32, 33, 34, 35, 36, 38, 41 and 42.

It is a clear proposition of law, that to entitle the plaintiff to recover, it must show a better title than the defendant's to the land in dispute, and upon this proposition the burden of proof rests upon the plaintiff. And

unless the jury can say from the evidence in the case, that the plaintiff has shown a better title to the land in controversy than the defendant, it is not entitled to a recovery. This is what is asserted by charge No. 3, and it was properly given.

The court may at the written request of either party charge upon the effect of the evidence, where it is free from conflict or adverse inference. The record sustains the predicate as to facts stated in charge 6, and the giving of the same was free from error.

In an action of ejectment the plaintiff can not recover unless he had title at the commencement of his suit. This is an elementary principle in such actions, which calls for no citation of authorities. Under the common law form of ejectment, each demise laid, is in nature and effect a separate count. And a recovery may be had upon any one of the several demises laid, if sustained by the proof. In the present case a number of demises are laid in different parties, among them one in each of the following parties, to-wit: Ben Johnson, Oxford Iron Co. and the Woodstock Iron Co. Written charges 10, 11 and 15, assert the proposition, that if these parties before the commencement of the suit, had conveyed away their title to the land in dispute, then there could be no recovery on the demises laid in them respectively. We can see no objection to the soundness of these charges.

No demise was laid in the "Anniston City Land and Improvement Company," and consequently the giving of charge 20 requested by the defendant, if erroneous, was without injury to the plaintiff. No possible injury could result to the plaintiff from an instruction to the jury that one who is not a party to the suit cannot recover.

Adverse possession short of the statutory period of ten years, can neither operate as a bar to a recovery, nor as a basis of title for a recovery, in ejectment. In computing the statutory period of ten years necessary to complete the bar, or give title upon which a recovery may be had, the period of time from January 11, 1861, to September 21, 1865, must be excluded. This is the proposition contained in written charge 26, and in the giving of it there was no error.

Charges 28, 29, 32, 33 and 34 assert the same principle, and that is, that the several deeds introduced in evidence, are not evidence that the several grantors had any interest or title in the land in dispute. While the deeds in themselves are evidence of a conveyance of whatever right, title or interest the grantors may have had in the land, they cannot as against the defendant, who is a stranger to the deed, be considered as showing that the grantor had any right, title or interest in the land. The giving of these charges at the request of the defendant was free from error.—*Mahone v. Arends,* 116 Ala. 19.

There was evidence on the part of the plaintiff tending to show that the land in dispute was patented to one Ben Johnson in 1852, that said Johnson cleared up and cultivated a portion of the same in 1855 or 1856, and afterwards in 1862 built a house on the adjoining forty acres known as the Cyclone Forty, and which was included in the patent issued for the forty acre tract in dispute, and in said year 1862 lived in said house and cultivated land in both forties, and in the latter part of said year 1862, sold said land in dispute to the Oxford Iron Co., that the Oxford Iron Co. succeeded said Johnson in the possession of said land, and during the years 1863 and 1864, cut timber and did coaling on said land, that said Oxford Iron Co. continued in the possession of said land up to 1874 or 1875 when it sold the same to the Woodstock Iron Co. On this phase of the evidence, by tacking the possession of the Oxford Iron Co. on to that of its vendor Ben Johnson, after excluding in the computation of time the period from January 11, 1861, to September 21, 1865, the jury might have found that the Oxford Iron Co. had acquired a title by adverse possession for a period of ten years. Under this view of the evidence the giving of charge 35 was erroneous, as it was, we think, clearly an invasion of the province of the jury.

Actual possession of any part of the land under color of title extends to the limits and boundaries as defined in the color of title, with the exception that it may not embrace such as may be adversely held by another. So

adverse possession under color of title which involves the element of actual possession, since without actual possession there can be no adverse possession, the possession is co-extensive with the boundaries defined in the color of title, subject to the exception above stated. There was evidence tending to show adverse possession by the defendant under color of title for the statutory period necessary to constitute a bar, and charge 36 being referable to this phase of the evidence was free from error.

It is a well settled proposition that a conveyance of land at the time adversely held is void as against such adverse holder, though valid and efficacious to convey title as between the parties to the conveyance. The proposition as stated in charge 38 is broad, and for that reason might have been refused, but in the giving of it there was no reversible error, as any possible misleading tendency of the charge could have been met by an explanatory charge asked by the plaintiff.

We think charges 41 and 42 are free from error.

For the error pointed out, the judgment must be reversed and the cause remanded.

Reversed and remanded.