# Driver *et al. v.* King.

*Ejectment.*

(DECIDED FEB. 17, 1906, 40 So. REP. 315.)

1. *Exceptions, Bills of; Time of Signing; Court Rules: Statutes.—* The orders extending the time for signing the bill of exceptions having been made by the trial judge, and not by an agreement of counsel in writing, the time of signing is not governed by Rule 30, Code 1896, p. 1200, but by § 620, Code 1896; and the bill having been signed within the time fixed by the last order of the trial judge, and within six months from adjournment of the court at which trial was had, motion to strike bill of exceptions will be overruled.

[Driver *et al. v.* King.]

2. *Appeal; Admission of Evidence; Curing Error.*—Although the court had admitted certain deeds in plaintiff's chain of title derived from M., if error, it was cured by the subsequent action of the court in charging, at defendant's request, that plaintiff had not shown any title from the United States and there could be no recovery by plaintiff on the demise of M.

3. *Adverse Possession; Evidence; Question for Jury.*—Where there is conflict in the evidence as to whether or not certain persons were in adverse possession of the lands in controversy, it was a question to be submitted to the jury for determination.

4. *Evidence; Conclusion of Witness.*—A question: "Are you the purchaser of the property in dispute in this case" calls for a fact and not a mere conclusion of the witness.

5. *Same; Res Gestae; Declarations; Boundaries.*—A statement by one claiming possession of the land, while on the lands, "These are our woods, the line is further out there," made to one looking to purchase, is admissible both as *res gestae* and as declarations respecting boundaries at a time when the maker was in possession.

6. *Same; Conclusion.*—A statement that a person was in open and notorious possession of the land in controversy was not a statement of facts, but a conclusion.

7. *Adverse Possession; Evidence.*—One of the issues being whether a conveyance from C. to M. was void because of adverse possession by defendant at time of its execution, it was competent for the plaintiff to testify that prior to his purchase he rode over the lands in question with M., and saw no one in possession, and to describe the character and condition of the land, as to woodland, uncultivated, uninclosed and unimproved.

8. *Same; Same; Plats.*—It being shown that a survey of the land had been made and that the plat or map was correct, such map was properly admitted in evidence.

9. *Same; Same; Taxation; Tax Assessment Sheets.*—When one claims by adverse possession, it is competent to show he did not return it for taxation; also that his tax assessments failed to show that he listed such lands for taxes, to rebut defendants claim of adverse possession.

10. *Appeal; Assignment of Error; Waiver.*—Assignments of error not insisted upon by counsel in his brief will be held to be waived upon appeal.

11. *Same; Same; Defects.*—This court being without power to correct assignments of error, an assignment which incorrectly refers to a witness who testified to the evidence referred to in the assignment is so defective this court cannot consider it.

[Driver *et al. v.* King.]

APPEAL from Perry Circuit Court.
Heard before Hon. JOHN MOORE.

James F. King sued Frank Driver, and others to recover possession of a certain tract of land set out in the complaint. The facts sufficiently appear in the opinion. There was judgment for plaintiff, and defendants appeal.

THOMAS E. KNIGHT and DEGRAFFENREID & EVINS, for appellant.—On motion to strike bill of exceptions, and as holding adversely to such motion appellant's cite the *Cooley's Case*, 132 Ala. 590. The plaintiff having failed to trace his title to the government must, in order to recover, connect his title back to some grantor in possession. Proof of conveyance by persons not shown to have been in possession, are therefore immaterial and inadmissible testimony.—*Schrack v. Zubler*, 34 Pa. St. 38; *Ablard v. Fitzgerald*, 87 Wis. 516.

To permit the witness to testify that he acquired title to the property in dispute was clearly a violation of the laws of evidence.—23 A. & E. Ency. Law (2d Ed.) pp. 462-3.

A person making declarations must have owned the land or been in possession of it, and had knowledge whereof he spoke. Neither is sufficient without the existence of the other.—*Hunnicut v. Peyton*, 102 U. S. 333; *Payne v. Crawford*, 14 So. Rep. 858; 1 Greenl. Evid. (13 ed.), 145 and note.

STEWART & STEWART and PHARES COLEMAN, for appellee.—The bill of exceptions in this case should be stricken for the reasons given in the motion.—Rule 30, p. 1200, Code 1896; *Abercrombie v. Williams*, 37 So. Rep. 296; *Birmingham Railway & Elec. Co. v. James*, 138 Ala. 590; *Cooley's case*, 132 Ala. 590.

DENSON, J.—This cause was tried at the fall term 1903, of the circuit court held for the county of Perry. Under the law as it then existed, relating to the time for holding the circuit court in that county, the court

was properly organized on the 9th Monday after the last Monday in August, which was the 2d day of November, in 1903. Acts of the General Assembly, 1900-01, p. 103. By the act of the Legislature approved the 13th day of February, 1903, the time for holding the circuit court in Perry county was changed to the third Monday before the last Monday in February and August in each year. The third section of this act provides that all laws in conflict with its provisions are repealed. The fourth section of the act provides that it shall go into effect from and after the 1st day of January, 1904.—Acts of the Legislature 1903, p 554  Under this last act the spring term, 1904, of the circuit court held for Perry county began on the 8th day of February, that being the third Monday before the last Monday in that month. The judgment appealed from was rendered on the 4th day of November, 1903, and 60 days were allowed by order of the court within which a bill of exceptions might be presented for the presiding judge's signature. Several times this time was extended by order of the presiding judge made in vacation, and the bill was finally signed on the 20th day of April, 1904, within the time of the last extension order, but after the succeeding term of the court at which the cause was tried had been held. Motion has been made to strike the bill of exceptions on the ground that it was signed after the next succeeding term of the court.—Practice rule 30, Code 1896, p. 1200, is as follows: "In all circuit and inferior courts of common-law jurisdiction, bills of exceptions may be signed by the presiding judge at any time during the term at which the trial or proceeding is had, or, by written consent of the parties, or their counsel, filed in the cause, at any time before the next succeeding term of such court, and not afterwards." It is upon this rule the motion to strike is based. It will be observed that this rule only applies to bills of exceptions signed under agreement of counsel. There is no agreement of counsel with respect of the signing of the bill in this case, but the original order extending the time was by the court, and all subsequent orders were made by the presiding judge in vacation. Consequently the

rule of practice under the construction given it by us in the case of *Cooley v. U. S. Savings & Loan Association,* 132 Ala. 590, 31 South. 521, followed by the cases of *Birmingham Railway & Electric Co. v. James,* 138 Ala. 594, 36 South. 464, and *Abercrombie & Williams v. Vandiver,* 140 Ala. 228, 37 South. 296, has no application here. The validity of the bill of exceptions must be determined by section 620 of the Code of 1896, which provides that the time allowed for signing a bill must not be extended beyond six months from the adjournment of the court. The bill was signed within six months from the adjournment of the court, and within the time fixed by the last extension order. All the orders made by the presiding judge in vacation extending the time as fixed by the court in term time are sufficiently shown. It follows that the motion to strike the bill of exceptions must be overruled. The action is common-law ejectment by James T. King against E. N. Driver and Frank Driver to recover 20 acres of land described in the declaration. The plaintiff obtained judgment below and the defendants appealed.

Eleven demises are laid in the declaration. The plaintiff to show title to the land offered the following documentary evidence: certified copies of the record of the following deeds: A deed from Charles Phillips to Levi Duckett, January 14, 1837; a deed from Levi Duckett to L. Q. C. De Yampert, May 7, 1851; a deed from L. Q. C. De Yampert to J. B. Markham, executed in May, 1855; a deed from J. B. Markham to Romulus W. Moore, May 10, 1855; a deed from Thomas C. Clark as administrator of the estate of Romulus W. Moore, deceased, to Thomas C. Hill, November 29, 1877; a deed from Thomas C. Hill to A. A. Coleman and James B. Coleman, January 27, 1878; a deed from Maria E. Moore to A. A. Coleman and James B. Coleman, November 29, 1877; a deed from the heirs at law of Romulus W. Moore, deceased, to A. A. Coleman and James B. Coleman, November 28, 1877; original deed from James B. Coleman to A. A. Coleman, as trustee, etc., March 21, 1885; original deed from Jones Coleman, one of the *cestuis que trust* in the deed to A.

A. Coleman, trustees, to W. T. Monghon, May 6, 1899; original deed from J. B. Coleman, Jr., one of the *cestuis que trust* in the trust deed to A. A. Coleman, to W. S. Monghon, February 26, 1900; original quit claim deed from Jones Coleman and James B. Coleman, Jr., to W. S. Monghon, July 13, 1900; original deed from A. A. Coleman and W. S. Monghon to James T. King, August 17, 1900. In support of the deed made by Thomas C. Clark as administrator a certified transcription of proceedings had in the probate court of Greene county, Ala., was offered in evidence by the plaintiff. This transcript showed the appointment of said Clark as the administrator of the estate of Romulus W. Moore, deceased, and regular proceedings had at the instance of the administrator, resulting in the sale of the lands in controversy as a part of the lands belonging to said estate; report of the sale showing that Thomas C. Hill and Maria Moore were the purchasers of the land, payment of the purchase money, and order that the administrator should make the conveyance. To each of the certified copies of deeds and the original deeds in evidence, and to the transcript of the proceedings had in the probate court of Greene county, the defendant interposed the following objections, to-wit: "(1) It had not been shown that the grantor in said deed was either in the possession of or owned said land at the time of the execution of said deed. (2) For that until it had been shown that the grantor either owned or was in possession of said land at the time of the execution of the conveyance the said deed was not admissible in evidence. (3) For that said deed was incompetent evidence. (4) For that said deed was not self-proving." The court overruled each of these objections and exception was reserved.

The first and second of the grounds of objection are the only ones insisted upon and we will consider the rulings of the court with respect to these two grounds only. It is not contended that there was any evidence which tended to show that Phillips, Duckett or Markham was ever in possession of the lands, nor was there

any to show that either of them held title from the United States. But there was evidence which tended to show that Romulus W. Moore, after the deed from Markham was executed, entered into possession of the land sued for, claimed them as his own, and died in possession of the lands in the year 1867. There was also evidence which tended to show that the grantors in the deeds in evidence, made subsequent to the death of Romulus W. Moore, were in possession, or that they held in privity to the title and estate of Romulus W. Moore. It is undoubtedly true that "a plaintiff in ejectment, in order to make out a right to recover, must show a regular chain of title back to some grantor in possession or to the government."—Tillinghasht's Adams on Ejectment (1840) p. 212; *Florence B. & I. Association v. Schall,* 107 Ala. 531, 18 South. 108; *Jackson Lumber Co. v. McCreary,* 137 Ala. 278, 34 South. 850. This doctrine was recognized by the trial court when, at the request of the defendants (appellants) in writing, as is shown by the record, the court charged the jury that there could be no recovery by the plaintiff on the demise by J. B. Markham. This was equivalent to an exclusion from the evidence of the deeds of Phillips to Duckett, Duckett to Markham, and Markham to Moore. And if the court erred in the admission of those deeds in evidence it was cured by the charge given. The court further charged the jury in writing, at the request of the defendants that the plaintiff had not shown any title from the United States government. Under the evidence, the objections insisted upon cannot prevail with respect to the deeds offered in evidence, which was executed subsequent to the death of Romulus W. Moore. This disposes of the assignments of error numbered from 1 to 13 inclusive.

The plaintiff and defendants were adjacent landowners. The record shows that the real question or issue involved was that of adverse possession or not by the defendants for a sufficient time to bar the plaintiff's right of recovery. The defendants both testified that their claim to the land was independent to any paper title. Their contention was that their father, as far back

as 60 years prior to the commencement of this suit, was in actual possession of, claiming the lands as his own and exercising acts of ownership over it until his death, the date of which event is not precisely shown, but prior to the year 1874. That their mother succeeded to the father's possession, and held the same until her death in 1875, when the defendants and their sister succeeded to her possession, and have held it continuously ever since, exercising acts of ownership over it. The proof showed without conflict that the plaintiff had a survey made of the lands, and that the 20 acres involved in the controversy which are located in the east half of the southeast quarter of section 20 are covered by and embraced in plaintiff's deed with other lands described therein. The proof also tends to show that after the survey was made the defendants erected a wire fence on the lands in controversy. This wire fence was an irregular line with respect to the points of the compass. The defendants' further contention was that, on the line where the wire fence was erected there had, many years prior to the erection of the wire fence, stood a rail fence which was erected by their father, but which had been removed; the date of the removal of the rail fence was not specified in the evidence. The land where the fence is located is woodland, and the evidence for the defendants tended to show that their ancestors and they in succession had claimed and exercised ownership over the lands west and north of the line marked by the wire fence and up to that line for many years. It further tended to show that Romulus W. Moore claimed the lands up to the line on the east and south side of it. The testimony without conflict showed that in the Driver tract of land there were 175 acres. One of the defendants testified that: "If the map made by Kemp, which had been offered in evidence (after testimony given that it was correct), is correct we had no deed to the land described in the complaint. During all these years I thought I was paying taxes on these lands. We had 175 acres in the tract, and Frank Driver gave it in for taxes." He further testified that he had been in possession of the land sued for with his

codefendant claiming to own it since 1875 independent of any deed. The tax lists of the defendants were offered in evidence, and showed the lands sued for were not excluded, but that defendants did give in and pay taxes on 175 acres of land, which were not in the east half of the southeast quarter, but adjoined it.

The testimony of the plaintiff tended to show that there was nothing to mark the boundary line between the lands claimed by Moore and his ancestors in possession and the Driver tract; that there was no old fence row there where the wire fence was erected. Without repeating more of the evidence, it suffices to say that there was evidence for the plaintiff which tended to show that the defendants were not in adverse possession of the lands in controversy, and tending to show that the parties' through whom plaintiff claimed held the possession of the lands. So the defense of adverse possession was properly left by the court for determination by the jury. —*Brown v. Cockerell*, 33 Ala. 38; *Alexander v. Wheeler*, 69 Ala. 332; *Humes v. Bernstein*, 72 Ala. 546; *Bernstein v. Humes*, 75 Ala. 241. Judge Coleman, a witness for the plaintiff, after testifying with reference to his possession of the lands sued for, on cross-examination, as is shown by the bill of exceptions, volunteered this statement, that, "During the time I owned the place, I bought some timber from Mrs. Scott." Even when examined in connection with the evidence of Judge Coleman that preceded this statement, we are unable to see the relevancy of the statement to any issue in the case, and the court should have sustained the motion to exclude it. But we are also unable to discover from the record how the statement could have possibly worked any injury to the defendants, and we conclude that the error in not excluding the statement was error without injury. The first question asked the plaintiff King as a witness by his counsel was, "Are you the purchaser of the property in dispute in this case?" Evidently, this question was asked merely for the purpose of identifying the witness as the party named as grantee in the conveyance from Coleman and Monghon which had already been intro-

38

[Driver *et al. v.* King.]

duced in evidence, and was not, as is insisted by appellant's counsel, the same as asking the witness, "Did you acquire title to the property in dispute in this case." Moreover, it has been held that a witness in an ejectment suit may be asked, "If he did not buy a portion of said land?"—*Barron v. Barron*, 122 Ala. 194, 25 South. 55; *Brannan v. Henry*, 39 South. 92.

One of the questions raised on the trial was whether the plaintiff's conveyance from Coleman and Monghon was void, on account of adverse possession held by the defendants at the time the conveyance was executed. It was competent for the plaintiff to offer evidence which tended to show that defendants were not in adverse possession, and that his grantors were, and that they were claiming to own the lands at the time. To this end it was competent for the plaintiff to testify that prior to his purchase of the lands he rode over it with Monghon; that he saw no one in possession of the lands; that the lands were woodland; that it was uninclosed, uncultivated, and had no improvements on it.—*Gist v. Beaumont,* 104 Ala. 347, 16 South. 20. In *Hunnicut v. Peyton,* 102 U. S. 364, 26 L. L. Ed. 113, cited by appellant, Mr. Justice Strong states the general rule in American courts in the matter of the determination of disputed boundaries to be that the declarations of the owner of land, since deceased, who, it is shown, had knowledge of the facts he stated—made while on the land, or in possession of it, in respect to its boundaries—are admissible in evidence."—1 Greenleaf on Ev. § 109, and authorities cited. Mr. Justice HARALSON, in *Payne v. Crawford,* 102 Ala. on page 398, 14 South. on page 858, after writing the above quotation, added the following: "While this rule is eminently true in case of deceased owners of lands in locating the boundaries of their possessions, it is by no means confined to that class, but is as applicable to living persons as well, where no intent to misrepresent appears. It cannot be said from the evidence that there was any intent on the part of Monghon to misrepresent any thing, when, as plaintiff testified, he pointed out the lines between his lands and the

[Driver *et al. v.* King.]

Drivers, and said: "These are our woods, the line is further out there." The parties were on the lands at the time and it would seem that this declaration falls within the influence of the rule above stated and also of the doctrine of *res gestae.* The court did not err in admitting such evidence.—3 Mayfield's Dig. p. 487, § 487. *Eagle & Phoenix Mfg. Co. v. Gibson,* 62 Ala. 369. In connection with the evidence which showed that the survey made of the lands and the "map or plat" of them were correct, there was no error in admitting the "map or plat" as evidence to identify the land in controversy. "The plat was not offered under section 3895, nor does it depend upon that section for its competency."—*Vandiver v. Vandiver,* 115 Ala. 328, 22 South. 154; *Hess v. Rudder,* 117 Ala. 525, 23 South. 136, 67 Am. St. Rep. 182; *Bridges v. McClendon,* 56 Ala. 327; *Burton's Case,* 115 Ala. 1, 22 South. 585; *Nolen v. Parmer,* 21 Ala. 66. Whether or not Romulus W. Moore was in possession of the lands after the deed was executed to him by Markham, was one of the contested questions on the trial. The questions asked plaintiff's witness Walthall, which were objected to by defendants, were competent for the purpose of showing his opportunities for acquiring knowledge of Moore's possession and to show to the jury the witness' qualifications to give testimony with respect to it. While it may be that witness Harwell's evidence with respect to having timber cut and hauled from the Moore place was subject to the objections contained in the motion made to exclude it, those objections were overcome by the testimony of witness Skinner, subsequently given, which clearly identified the lands sued for as the lands on which Harwell had the timber cut.

The twenty-second ground in the assignment of errors based upon the ruling of the court excluding a part of the evidence of defendants' witness Alex. Chisolm is not insisted upon by counsel in their brief, and, following many precedents established by this court, we pass it without consideration.—2 Mayfield's Dig. p. 149, § 367; *Scarbrough v. Borders,* 115 Ala. 436, 22 South. 180. It is true that possession is a fact to which a witness may

testify.—*Eagle & Phoenix Co. v. Gibson,* 62 Ala. 369; *Steed v. Knowles,* 97 Ala. 579, 12 South. 75. But we have never held that a witness may testify that a person was in the open and notorious possession of land. The character of possession was a fact to be determined by the jury from the evidence, and to aid them in reaching a conclusion as to openness and notoriety of possession, it was competent for witness who had testified to the fact of possession to state how the defendants used the land— what acts of ownership they exercised over them—and whether frequent or otherwise. But it is clear that for a witness to testify that a person was in the open and notorious possession would be but the echo of the opinion of the witness, and a usurpation of the functions of the jury. In this view the court properly sustained plaintiff's objection to the question asked witness Rasco. *Benje v. Creagh's Adm'r.,* 21 Ala. 151; 3 Mayfield's Dig. § 838. The fact that one claiming land adversely did not return the land for taxation is a relevant circumstance tending to rebut his evidence that he claimed to own the land.—*Wing v. Roswald,* 74 Ala. 346; *Doe ex dem, Anniston City Land Co. v. Edmondson,* 127 Ala. 445 37 South. 424. Frank Driver, one of the defendants, testified that the tax assessment sheets which were exhibited to him by plaintiff's counsel and afterwards admitted in evidence over defendant's objection were not filled out when he signed them; that the assessor told him he would get the numbers of the land and he (witness) did not know where he got them nor what numbers he put in the assessments. This method of assessment from year to year, with defendant's consent, rendered the assessment sheets competent; they showed that 175 acres of land were listed for taxation, and the description of the lands listed did not include the lands in controversy. The assessment sheets were properly admitted over the specific objections made.

The twenty-fifth assignment of error is in this language: "The court erred in its refusal to exclude on motion of defendants following part of testimony of

[Hayes v. Woodham.]

the witness J. T. King, 'that they ought to be, as E. N. Driver was his family physician.' See page 201 of the record." Now, we have examined page 201 of the record, and it shows that the assignment would be properly made if the name of the witness referred to had been written, "J. J. Harwell," but, in the use of the name "J. T. King," the assignment is without foundation, as no such ruling was made by the court with respect to J. T. King's evidence. We are without power to correct the assignment of error, and cannot review the question sought to be presented by it.

The court at the request of the defendants in writing gave 16 charges, and these constitute separate grounds of error in the defendants' assignment of errors; but, of course, this was a mere inadvertence, and the grounds have not been insisted upon. The general affirmative charge was refused to the defendants, but the ground of error relating to it has not been insisted on.

There is no error in the record prejudicial to the appellants, and the judgment of the circuit court is affirmed.

Affirmed.

HARALSON, DOWDELL, SIMPSON, and ANDERSON, JJ., concur.