ditions upon which the inquest will be opened, which it would be improper to impose at Trial Term.

There seems to be in this case a fair question as to the breach of the contract upon which the plaintiff seeks to recover. A denial of this motion disposed of the issues and ended the controversy in favor of the plaintiff, without giving the defendants their day in court and a chance to prove their defense. The absence of counsel for the defendants, who had charge of the case, in Europe, and his detention there, is a reason why it was impossible for them to go on with their trial; and I am inclined to think the court at Special Term should have exercised its discretion in favor of allowing the defendants their day in court. This, however, should be upon the terms that the defendants should pay, as a condition of setting aside the inquest, a trial fee of $30, a term fee of $10 for opposing the motion, and all the disbursements the plaintiffs incurred in taking the inquest and entering judgment; the judgment to stand as security until the final determination of the action.

The order should therefore be reversed, and motion granted, upon complying with the foregoing terms within 10 days after service of a copy of the order. If terms are not complied with, motion denied, with $10 costs. No costs of appeal. All concur.

---

(110 App. Div. 167)

### BRAXMAR v. STANTON et al.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

1. EVIDENCE—BEST EVIDENCE—CORPORATE ACTS.

On an issue as to whether a certain person was employed by a corporation as its superintendent, in the absence of any showing that the corporation had any minutes, or that there was any entry or writing which contained a record of the contract of employment, it was proper to prove such employment by oral testimony as to transactions at a directors' meeting.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 461.]

2. CORPORATIONS—ACTS OF AGENT—RATIFICATION.

Where the superintendent of a corporation ordered goods which were used by the corporation in the furtherance of its business, such use amounted to a ratification of the superintendent's order

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 1714.]

Appeal from Trial Term, New York County.

Action by Charles G. Braxmar against Grace Van Cott Stanton and others. From a judgment in favor of defendants, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, CLARKE, INGRAHAM, and HOUGHTON, JJ.

Albert A. Wray, for appellant.
J. Ralph Burnett, for respondents.

INGRAHAM, J. The plaintiff sought to recover from the defendants, as trustees of a membership corporation, for goods manufactured and delivered to the corporation; judgment having been entered against

the corporation and execution returned unsatisfied. Section 11 of the membership corporation law (chapter 559, p. 335, of the Laws of 1895) provides that the directors of every membership corporation, with certain exceptions, "shall be jointly and severally liable for any debt of the corporation contracted while they are directors, payable within one year or less from the date it was contracted." The corporation known as the "American Pet Dog Club" was organized on the 22d day of June, 1888, under chapter 267, p. 264, of the Laws of 1875. The complaint alleges, and the answer does not deny, that the appellant was the president and one of the directors of the said corporation at the time the debt was contracted, November 25, 1899. The plaintiff proved the recovery of judgment against the corporation and the return of the execution unsatisfied, leaving the only question at issue whether the goods were sold and delivered to the corporation. The plaintiff then called a witness who testified that he was the veterinary for the show of the club for the year 1899; that the club held its show at the Metropolitan Opera House in December, 1899; that the witness attended the meetings of the directors during the years 1888 and 1899, at which the appellant presided. He was then asked:

"At these meetings who, if anybody, was designated by the board of directors as superintendent of this club?"

That was objected to on the ground that the records of the club were the best evidence; and the objection was sustained upon the ground that it involved the conclusion of the witness. The witness then testified that he knew a Mr. Schuyler C. Hodge, who was in attendance at this show in 1899; that he attended to getting entries for the club and the general looking after things; that the show lasted four days, and the witness was there every day, and Hodge was there every day, and the defendant Mrs. Stanton was present. The catalogue of the third annual show of the American Pet Dog Club, held at the Metropolitan Opera House, New York City, on November 29, 30, and December 1, 1899, was then produced, and the witness testified that he saw the paper at the Opera House on the occasion of the show in 1899. This catalogue was then offered in evidence, objected to, and the objection sustained, to which the defendants excepted. He was then asked:

"Was anyone put in nomination there as superintendent of the club at any of the meetings that you attended?"

That was objected to on the ground that it was not the proper way to prove what was done at a meeting of a corporation. This objection was sustained and the defendants excepted. He then testified that Hodge's name was mentioned at the meeting of the directors, and was asked how it was mentioned, and what was then said about Hodge, which was excluded. The witness also testified that the corporation had an office in Park Row. The salesman for the plaintiff testified that he knew Hodge in the years 1898 and 1899, and that his office was at No. 21 Park Row during that year; that he called at Mr. Hodge's at the Park Row building, and saw on the door at that building, in the office he occupied, the name of the American Pet Dog Club, and directly underneath "S. C. Hodge, Superintendent," and that he delivered the goods at that address; that the goods were 125 bronze medals, 25 sterling silver medals, and 870 ribbons for first, second,

and third prize dogs. The plaintiff then offered to prove the market value of these medals, which was objected to, and the objection sustained.

I think this evidence was all competent, and that it was error to exclude it. The objection to the evidence appears to be that the action of the board of directors of the corporation must be proved by the minutes of the meeting of the directors, and not by oral testimony of what happened at that meeting; but in this case there is no evidence that this corporation had any minutes, or that there was any entry or writing which contained a record of the meeting, or of the contract or employment of Hodge as an employé of the corporation. An act of the directors of the corporation employing a person to act on its behalf would be a perfectly valid employment, whether or not a record of the meeting was kept. Hodge assumed to act for the corporation in ordering these goods for it. The goods were delivered at the office of the corporation by the plaintiff, and, if Hodge had authority to order the goods and to receive them, the corporation was liable. I cannot find direct evidence that these medals were used by the corporation at its show. The corporation could ratify the act of Hodge in ordering the medals on its account, and a receipt of the medals and the use by the corporation would be such a ratification.

It was, however, error to exclude the evidence mentioned, and the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.