# McMillan, et al. v. Aikin, et al.

## Ejectment.

(Decided November 7, 1914.   66 South. 624.)

1. *Boundaries; Description; Evidence of Title.*—The description of the petition addressed to the Spanish Governor General in 1798, and the description of the deed from such petitioner to plaintiff's predecessor in title examined and held to embrace no land lying south of Bayou Jasmine, especially in view of the location of such bayou, and other watercourses mentioned in such instrument with respect to each other.

2. *Ejectment; Title; Burden of Proof.*—Where a plaintiff in ejectment relies upon a conveyance from another, there must be evidence that at the time of the conveyance such grantor had the legal title to the land conveyed.

3. *Same; Parol. Evidence.*—Where. a conveyance definitely describes a tract or plat of land, it cannot, in a court of law, be made the basis of a right to recover a different tract not therein described, nor can evidence of the grantor's intention to convey such other tract be received, since it is the province of the court of equity to correct or reform the description of a written instrument.

APPEAL from Baldwin Circuit Court.

Heard before Hon. A. E. GAMBLE.

Ejectment by Norma Aikin against Benjamin Mc-Millan and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

See, also, 182 Ala. 303, 62 South. 519.

The following documents are referred to in the opinion, other than the map:

Patent executed by the president of the United States:

United States of America. To All Whom These Presents shall Come:—Greeting: Whereas, there has been deposited in the General Land Office a certificate

numbered 2, of the register and receiver of the land office at St. Stephens, Ala., with a plat of the survey of the tract of land therein mentioned, whereby it appears that by the act of Congress approved on the 2d day of March 1829 entitled "An act confirming the reports of the Register and Receiver of the Land Office for the district of St. Stephens, in the state of Alabama, and for other purposes," the claim of the legal representatives of Louis Baudin, in right of Louis Baudin, entered as No. 2, in abstract A, No. 1, of the register and receiver has been confirmed, and that the same has been surveyed, and is designated on the plat of the survey, dated Aug. 11, 1838, in the General Land Office as sec. 40, in township 1 north, of range 2 east, containing 1242.50 acres, in the district of land subject to sale at St. Stephens in the state of Alabama: Now, know ye, that the United States of America, in consideration of the premises, and in conformity with said act of Congress, have remised, released, and forever quitclaimed unto the said legal representative of Louis Baudin, and to their heirs the said lands above described, subject to any just claim or claims, to all and every part thereof, of all and every person or persons, bodies politic or corporate, derived from the United States of America, or from either the British, French or Spanish authorities; to have and to hold the same together with all rights and privileges, immunities and appurtenances of whatsoever nature thereunto belonging, subject to any such first claim or claims as aforesaid, unto them, the said legal representative of Louis Baudin, and to their heirs and assigns forever, so that neither the United States, nor any person claiming under them, except as is provided in said act, and the reservations aforesaid, may or can set up any right or title thereto. (Here follows the usual formula of

signing, dated October 11, 1838, signed by President Martin Van Buren.)

The following is a petition addressed to the Governor General:

Deed Book Y, p. 547. To His Excellency, the Governor General: Louis Baudin, an inhabitant of this town, with due respect, represents to your excellency that he is established many years ago by permission of his honor, the commandant of this town, upon a tract of land fronting on the north side by Bayou Jasamine, and extending towards the north below twenty arpens, bounded on the west side by Bottle Bayou, on the south by said Bayou Jasamine, and in consideration that the clearing of the same, and other things necessary has caused him great expense, wherefore, he humbly entreats your excellency will be pleased to grant him the tract of land above described, and order the necessary documents recovered to be delivered to him, a favor which he hopes to receive from your excellency. Mobile, April 27, 1798. [Signed] Louis Baudin.

To His Excellency, the Governor General: The petioner is an inhabitant of this town, and a man worthy of respect who has cultivated and occupied said land for many years, and agreeably to the information which I have acquired the above-described tract of land belonged to the royal domain. Nevertheless, your excellency will decide as you may think fit. Manuel de Lanzos.

Papers of June 28, 1798. The commandment of the town of Mobile shall establish this party upon the tract of land which he solicits, bounded on Bayou Jassamine, and extended the same twenty arpens in the spot designated in the memorial above set forth, it being vacant, and without injury to a third person, return-

ing to me when done the proceedings of the measurement by the Surveyor General, in order to provide the interest the corresponding title and due form. Manuel de Lemos.

The foregoing is conformable with the original which remains in this commander's office under my charge to which I refer, and at the request of the party, I grant these present before two witnesses of assistance for want of a regular notary, and in common papers, the seal not being in practice. Mobile, on the 1st day of August, 1805. Franco. Maximo de St. Maxent. Francisco Ganete. John Laez.

The following is a deed from Baudin to Kennedy: "Be it known by this public instrument of writing that I, Louis Baudin, an inhabitant of this jurisdiction, do hereby grant and sell really and in fact to Joshua Kennedy of the town aforesaid, a certain tract of land containing twenty arpens front with the ordinary depth bounded fronting Bayou Jasamine, and bounded on the west by Bottle Bayou and Tensaw river, it being the same which I have acquired by virtue of a concession made to me by his excellency, Manuel Gayoso de Lemos, Governor General of this Province by his deed bearing date June 28, 1780. I say 98, and it is the same tract of land described as aforesaid that I sell to the aforementioned Kennedy for the sum of $190 cash in hand paid of which sum I acknowledge myself satisfied at will and grant a formal receipt. By means of which I divest myself of the right of property, possession, useful dominion and other actions real and personal which I have and held in and over said tract of land, and also release and transfer the same to the purchaser, his heirs, administrators, and assigns in order that as his own he may possess, enjoy, sell alienate, build upon and cultivate the same at his will,

by virtue of this deed which I make in his favor in token of real delivery whereby it is shown that he has acquired possession of the above granted premises without the necessity of any further proof of which I relieve him, binding myself to the eviction, security and warranty of this sale with my property present and to come, in due form of his granting power and authority to the parties of his majesty, in order to compel me to its fulfillment with the rigid soature ayron, and passed by the authority as the case condemned. And I, said Joshua Kennedy, being present at the execution of this deed of conveyance do accept the said tract of land as purchased in my favor for the same conformity and conditions as are expressed therein, acknowledging the same as delivered to my disposal, and in virtue thereof I grant a formal receipt and discharge. (Here follows the usual Spanish formula of the lieutenant colonel and military commandant of the town, as to the execution and delivery of the same, and the grant by the commandant at the request of the purchaser by the assistance of two witnesses, in the absence of a notary.)

The following is the register's and receiver's report:

Register's and Receiver's Report A, No. 1, Claim No. 2. Section 40, Township 1 North, Range 2 East, St. Stephen's Land District. Pursuant to an order of survey issued by the register and receiver of the land office at St. Stephens, Ala., dated Jan. 13, 1838, I have surveyed for the legal representative of Louis Baudin, a tract of land situated on the waters of the Tensaw river, in township 1 north, range 2 east, and designated as claim No. 2, in abstract A, No. 1, of the register and receiver, and comprising the following: Subdivisions B and C of section 29, the southeast quarter of subdivisions 1 and 2 of section 30; subdivisions A, B, C and

[McMillan, et al. v. Aikin, et al.]

D, and the southwest quarter of section 31, and the east half and the southwest quarter of the northwest quarter of section 31, the west half of the southwest quarter of section 32, east half of section 31, all in township 1 north, range 2 east, containing 1240.50 acres, and having such shape, form and marks natural and artificial as are represented in the above plat and description. [Signed] John James, Deputy Surveyor.

Examined and approved. James H. Weekly, Surveyor General of the Public Lands in Alabama.

The following is a copy of the plat referred to in the opinion:

MCMILLAN & GRAYSON, and JESSE F. HOGAN, for appellant.

GREGORY L. & H. T. SMITH, for appellee.

MCCLELLAN, J.—Statutory ejectment by appellee against appellants. In brief for appellants there is inserted a map which counsel for appellee say is a very good sketch of the locus in quo involved and influential in this controversy. And it may be added that the

record itself confirms the correctness of the map just mentioned. The report of the appeal will contain a reproduction of that map. The shaded part of the map, having as its west line the range line, is the particular land in dispute. It will be observed from the map that the land in question lies south of Bayou Jasamine, formerly Bayou Forbeau. At pages 52 and 53 of the transcript this recital appears:

"Some of defendants' witnesses stated that the beds of the water courses Bayou Jasamine and Jug Lake have never changed from where they now are, and this was the only testimony on this point."

The report of the appeal will also contain these documents as they appear in this transcript: (a) The patent executed by the President of the United States; (b) the petition of Louis Baudin, of date April 27, 1798, addressed to the Governor General, along with its associated document signed by Manuel de Lanzos; (c) those documents, dated June 28, 1798, and August 1, 1805, signed, respectively, by Manuel de Lemos and Franco, Maxime de St. Maxent et al.; (d) the instrument purporting to convey lands from Louis Baudin to Joshua Kennedy, of date August 27, 1806; (e) and the "Register's and Receiver's Report A, No. 1, Cl. No. 2."

The plaintiff asserts, and relies, at least in the main, upon, the possession by her in orderly succession of a perfect title, in character, from Louis Baudin; the insistence being that Baudin conveyed, assigned, or transferred to Joshua Kennedy the rights of Baudin to land inclusive of that now in dispute, and that, in regular turn under acts of Congress confirming claims or rights in land held or claimed under Spanish authority dominant in that territory when cession of that territory was made to the United States, title vested

[McMillan, et al. v. Aikin, et al.]

in her.   The trial court accepted the plaintiff's view;
and so gave these instructions to the jury: "The plain-
tiff is entitled to a judgment for the property sued for,
unless defendants reasonably satisfy you that under
color of title they acquired title to this land by ad-
verse possession."

And again: "The court charges the jury that plain-
tiff in this case has shown a perect legal paper title
to the land sued for and is entitled to recover unless
the jury are reasonably satisfied from the evidence that
the defendants acquired title by having and maintain-
ing open, notorious, exclusive adverse possession of the
property for a continuous period of ten years."

It is established in this court that, when the plain-
tiff relies upon a conveyance from another, there must
be evidence that, at the time of the conveyance, the
grantor had the legal title to the lands in question.—
*Baucum v. George,* 65 Ala.259, 267.

A careful consideration by the sitting members of
the court, in the consultation of the court, of the papers
herein above directed to be set forth in the report of
the appeal—and so in the light of the argument in
briefs for appellee in this connection—leads tothe con-
clusion that the instrument lettered (for description
and reference) "d,'" purporting to transmit the rights
of Baudin to Kennedy and the petition lettered (as
above) "b," and the patent from the United States,
lettered "a," based upon the petition and its associa-
ted or related documents, do not include and describe
the land involved in this suit.   Our opinion is that the
land described in the Baudin-Kennedy instrument has
no reference to the land lying south of Bayou Jasa-
mine, formerly Bayou Forbeau.   As we understand it,
such is the clear expression of the instrument; for it
unmistakeably and particularly describes the land in-

volved as bounded on the south (lying north of) Bayou Jasamine.

Reference to the map before mentioned, in connection with statements to be quoted from pages 7 and 8 of the transcript, leave no room for doubt that Bottle Bayou empties into Tensaw river north of the point at which Bayou Jasamine branches off to the east. Aiken Island, according to the record, "is bounded by the following water courses: * * * On the south by Bayou Forbeau which is also called Bayou Jasamine; on the west by Bottle creek and Tensaw river and on the north and east by Tensaw river." This statement necessarily projects Bottle creek north of the point where Bayou Jasamine leaves or joins Bottle creek; and, in consequence, permits that creek to be a western boundary of the Island. Again it is said in the record: "That Bottle Creek is a stream about a mile west of the land involved in this action in Tp. 1 N. R. 1 E., which flows into Tensaw river, and that it and Tensaw river bound the Aiken Island on the west and Bayou Jasamine bounds that island on the south."

And again it is recited: "The map and evidence showed that Bayou Jasamine is a small stream flowing out from the east side of Bottle creek in an easterly direction. * * *"

When the stated physical relation of these water courses is understood as the map and the record describes it, the particular land described as follows in the petition, before referred to, and in the Baudin-Kennedy instrument necessarily locate it north of Jasamine Bayou, and attingent to the east side of Bottle Bayou, viz. (as in the petition): "* * * A tract of land front on the north side by Bayou Jasamine and extending towards north below twenty arpens, bounded on the east side by Bottle Bayou, on the south

by said Bayou Jasamine and on the east by Tensaw
river.   *   *   *"

And, as in the Baudin-Kennedy instrument; "*   *   *
A certain tract of land containing twenty arpens front
with the ordinary depth bounded fronting Bayou Jasa-
mine and bounded on the west by Bottle Bayou and
Tensaw river, it being the same which I have acquired
by virtue of a concession made to me by his excellency
Manuel Cayoso de Lemos, Governor General of this
province. by his deed bearing date twenty-eight of June
one thousand seven hundred and (eight) I say ninety-
eight and it is the same tract of land described as afore-
said.   *   *   *"

According to the description and terms of the Bau-
din-Kennedy instrument, Baudin only undertook to
transmit to Kennedy the same tract the Gov-
ernor General had granted to him; and, when ref-
erence is had to that petition and proceeding, the grant
was only of land lying north of Bayou Forbeau or
Jasamine and bounded on the west by Bottle Bayou
and Tensaw river.

These writings are not ambiguous in respect of the
particular subject-matter thereof.  That is specifically
defined so far as excluding land south of Bayou Jas-
amine is concerned.  No custom or usage of the char-
acter given consideration in *Slidell v. Grandjean,* 111
U. S. 412, 4 Sup. Ct. 475, 28 L. Ed. 321, could avail
to alter the express description of land set down in the
instruments referred to.  Under the circumstances
made by these writings, particularly describing a read-
ily ascertainable area of land, no reason appears or
has been made to appear why the ordinary rules of
law touching ordinary conveyances of real estate in
this state should not have effect and be applied.  Where
a conveyance definitely describes a tract or plot of

land, it cannot, in a court of law, be the basis of a right to recover another and different tract of land not described therein; nor can evidence of the grantor's intention to convey such other and different tract be received; for the correction of the description in the instrument must be sought in a court of equity.—*Foster v. Carlisle,* 159 Ala. 621, 48 South. 655, and authorities therein cited.

The trial below proceeded upon a different basis, in respect of the documents mentioned and the legal result attending their presence as evidence in the cause; and the court by the quoted instructions to the jury gave them an evidential, legal effect opposed to the conclusion prevailing here. The judgment must therefore be reversed and the cause remanded. The law touching adverse possession in its varied relations has been so often stated here it is not now thought necessary to reiterate.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and DE GRAFFENRIED, JJ., concur.