(88 South. 135)

McMILLAN v. AIKEN et al.    (1 Div. 127.)

(Supreme Court of Alabama.  Nov. 18, 1920.)

1. Trespass ⬪45(2)—Evidence that grantee of land devised to children, one of whom was defendant's mother, competent.

In an action for trespass to land, conversion of lumber, and for trover, where, in interrogatories propounded by plaintiff to defendant, under the statute, the answers offered in evidence by plaintiff were to the effect that one to whom the land was patented conveyed the same to another, it was competent to introduce in evidence such other's will devising his lands to his children, one of whom was defendant's mother.

**2. Trespass** ☞45(2)—**Deeds purporting to convey to defendant interests acquired under devise admissible.**

In an action for trespass to land, conversion of lumber, and for trover, if certain lands were conveyed by one to whom they were patented to another, and defendant's mother, sisters, and brother acquired interests therein by devise, there was no error in the admission in evidence of the respective deeds purporting to convey such interests to defendant, though deeds purporting to convey other lands than those on which the suit was based were improperly admitted.

**3. Alteration of instruments** ☞24(1) — **Evidence** ☞372(6, 12)—**Before deed is admissible as ancient document, it must be found in proper custody and unblemished.**

In the absence of proof of its execution, before a deed at least 30 years old is admissible in evidence as an ancient document, it must not only be found in the proper custody, but must be unblemished by alteration, and otherwise without marks of suspicion attached to it, with nothing suspicious about it.

**4. Evidence** ☞473—**Testimony as to fact of possession of land admissible.**

In an action for trespass, for conversion of lumber, and trover, questions propounded to witnesses, "Who has been in possession of the land next west of you since you have known it?" etc., sought to elicit evidence of the fact of possession of land, a collective fact to which a witness may testify.

**5. Appeal and error** ☞1058(2)—**Error in not permitting witness to answer question harmless where matter previously inquired about.**

No reversible error was committed in declining to allow a witness to answer a proper question on rebuttal where the matter inquired about had been covered by the witness in his direct examination.

**6. Evidence** ☞473—**Testimony not statement of collective fact of possession of land, but mere conclusion.**

In an action for trespass to land, for conversion of lumber, and for trover, the answer of a witness that he had always looked upon plaintiff as being in possession of certain land was not a statement of the collective fact of possession, but a mere conclusion of the witness.

**7. Trespass** ☞45(3)—**Testimony of plaintiff relative to timber operations admissible.**

In an action for trespass to land, for the conversion of lumber, and for trover, plaintiff's testimony relative to the lands involved and the timber in question, concerning timber operations thereon by plaintiff and his predecessors, *held* admissible.

**8. Adverse possession** ☞44—**Cessation of use of timber land in accordance with custom not interruption of possession.**

Cessation of use of timber land in accordance with neighborhood custom and in conformity to some natural condition or agency making the custom necessary would not be an interruption of the user's possession if, when resumed, the use was connected with acts of possession which had gone before so as to become a part or continuation thereof, and not merely several occasional, desultory, or temporary acts of intermittent trespasses, so that, where the claimant of timber land at one time in the year deadened and cut trees thereon, and at another time in the year ran the timber off when there was a freshet, continuing these operations from year to year, possession was uninterrupted.

**9. Trial** ☞139(1)—**Directed verdict proper only where no evidence tends to establish plaintiff's case.**

It is only where there is no evidence tending to establish plaintiff's case that the court may direct a verdict for defendant.

**10. Trial** ☞142—**General charge should not be given where evidence justifies inference adverse to recovery.**

If there is evidence reasonably affording an inference adverse to right of recovery by the party asking the general charge, or from which the jury might draw an inference adverse to such party, the general charge should not be given.

**11. Appeal and error** ☞927(7)—**Evidence offered by party against whom general charge given accepted as true.**

In determining the propriety of the general charge, the evidence offered by the party against whom it is given must be accepted as true.

**12. Trespass** ☞67 — **General affirmative charge held improper.**

In an action of trespass, for the conversion of certain lumber, and for trover, under conflicting evidence as to the true source of defendant's title and of the genuineness of the deed, etc., *held*, that the general affirmative charge was improperly given at defendant's request in writing.

**13. Evidence** ☞372(1)—**Deed held admissible as ancient deed.**

In an action of trespass, for conversion of lumber, and for trover, warranty deed offered by plaintiff to connect his timber title and title to the fee of the land in another with a Spanish claim and grant and patent thereof, etc., *held* admissible as an ancient deed; the recitals of the deed, free from suspicion, being evidence of the facts.

**14. Names** ☞18—**Identity of names prima facie evidence of identity of persons.**

Identity of names is prima facie evidence of the identity of persons; the question being for the jury when involved in an action of trespass by plaintiff claiming under a certain ancient deed.

**15. Deeds** ☞31—**Variances in spelling of name of ancestor of grantors immaterial.**

In an action of trespass, for conversion of lumber, and for trover, exclusion from evidence of an ancient deed *held* not to be justified by reason of the different spellings of the name of the ancestor of the grantors as "Baudin," "Beaudin," and "Bauden"; such variances being idem sonans.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**16. Deeds** ⚖══38(1)**—Ancient deed not inadmissible as for uncertainty in description.**

In an action of trespass, exclusion of ancient deed *held* not justifiable on the ground it was void for uncertainty in description of the land conveyed; a latent ambiguity only appearing on its face as to its boundary by a bayou and the extent of its frontage thereon.

**17. Evidence** ⚖══23(2)**—Court takes judicial notice of government surveys of certain lands.**

The Supreme Court takes judicial notice of the several government surveys of the lands in Alabama on the Tensaw river and Bayou Jessamine and in St. Stephens land district, of the location and areas of the Louis Baudin and Francis Girard claims as surveyed and platted by the constituted authorities of the United States shown by the records in the public land office, and of the fact and extent of the confliction of the two claims.

**18. Deeds** ⚖══38(1)**—Latent ambiguity of description insufficient to justify rejection as evidence.**

Latent ambiguity of description in ancient deed offered in evidence by plaintiff in an action of trespass, for conversion of lumber, and for trover, when referred to and aided by the plats and surveys having application, *held* insufficient to justify rejection of the deed as evidence.

**19. Words and phrases—"Arpen"; "arpent."**

An "arpen" or "arpent" (arpens) is defined as a measure of land of uncertain quantity, mentioned in Domesday and other old books, by some called an acre, by others half an acre, and by others a furlong, being a French measure of land containing 100 square perches of 18 feet each, or an acre.

[Ed. Note.—For other definitions, see Words and Phrases, Arpent.]

**20. Deeds** ⚖══38(1)**—Blanket description in ancient deed sufficient to convey title.**

Blanket description employed in ancient deed offered in evidence by plaintiff in an action of trespass, for the conversion of lumber, and for trover, when its latent ambiguities were explained by the evidence as to the land owned by the grantors' ancestor, *held* sufficient to convey title to the grantees.

**21. Deeds** ⚖══38(1)**—Blanket description sufficient to convey interest of grantor.**

In an action of trespass, for conversion of lumber, and for trover, an instrument purporting to be a transfer of the right, title, and interest of an individual or a company in the land *held* admissible as a link in plaintiff's title from and through a lumber company to foregoing conveyances and source of his title; the blanket description employed in the conveyance being sufficient to convey the interest of the grantors and to pass title.

**22. Trespass** ⚖══45(2)**—Deed of company admissible as muniment of title.**

In an action of trespass, for the conversion of lumber, and for trover, instrument executed by a company purporting to transfer all its right, title, and interest in the land *held*

competent as a muniment of title as relating to the transfer of the properties involved and as explaining the right of the corporation to convey the fee to a third person and the timber interests to plaintiff.

**23. Evidence** ⚖══383(6)**—Records, including minutes, prima facie evidence for and against company and stockholders.**

The records of a corporation, including its minutes or other record of the acts of its incorporators, stockholders, members, directors, or trustees, are generally admissible as prima facie evidence in favor of and against the corporation and its stockholders or members on questions relating to the creation and organization of the corporation, performance of charter or statutory requirements, corporate proceedings after organization, and other like matters.

**24. Evidence** ⚖══157(3), 178(3)**—Minutes of stockholders' proceedings provable by parol where not kept in writing or lost.**

Where no written minutes are kept of the proceedings of stockholders in a corporation, they may be proved by parol; also they may be proved where the original minutes are lost or destroyed.

**25. Deeds** ⚖══38(1)**—Company's deed sufficient to convey interest if executed with authority.**

Deed from a lumber company to plaintiff suing in trespass purporting to convey all its assets *held* sufficient to convey such company's title or interest in the land in controversy to plaintiff if executed with due authority.

Appeal from Circuit Court, Baldwin County; A. E. Gamble, Judge.

Action by Benjamine F. McMillan against Norma Aiken and another for trespass to land, conversion of certain lumber, and for trover. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Brooks & McMillan, of Mobile, for appellant.

The court erred in directing a verdict for the defendant. 110 Ala. 452, 18 South. 215; 146 Ala. 685, 40 South. 323; 144 Ala. 343, 39 South. 74; 186 Ala. 580, 64 South. 787. As to the description, see 72 Ala. 39; 13 Cyc. 628–631; 188 Ala. 572, 66 South. 443; 175 Ala. 443, 57 South. 836. As to the recitals in the ancient deeds and after grantor's heirship to Baudin, see 170 Ala. 289, 54 South. 415; 150 Ala. 110, 43 South. 729; 5 Wall. 795, 18 L. Ed. 653; 117 U. S. 389, 6 Sup. Ct. 780, 29 L. Ed. 915. These authorities also establish a conveyance of the legal title from Pollack. See, also, section 3356, Code 1907; 123 Ala. 105, 26 South. 289; 143 Ala. 446, 39 South. 325; 20 Ala. 386, 83 South. 132; 111 Ala. 596, 20 South. 443; 73 Ala. 254; 148 U. S. 301, 13 Sup. Ct. 595, 37 L. Ed. 459. Payment of purchase money for lands renders subsequent possession presumably adverse. 84 Ala. 560, 3 South. 475, 5 Am. St.

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Rep. 393; 78 Ala. 37. The use of the land was continuous. 171 Ala. 626, 54 South. 549. The record of an instrument is admissible only on the theory that the original once existed. 38 Ala. 259. As to when an ancient deed is admissible, see 124 Ala. 461, 27 South. 259; 170 Ala. 239, 54 South. 272; 17 Cyc. 443. Possession of land is a collective fact, to which a witness may testify. 97 Ala. 575, 12 South. 75. Bare possession is sufficient to entitle to a recovery against wrongful interference. 62 Ala. 369; section 2454, Code 1907. The description conveying all the assets to the Stockton Lumber Company was sufficient to pass for legal title. 203 Ala. 118, 82 South. 132. As to authorities on plaintiff's title by adverse possession, see 84 Ala. 560, 3 South. 475, 5 Am. St. Rep. 393; 78 Ala. 37; 129 Ala. 195, 29 South. 800; 92 Ala. 571, 9 South. 332; 168 Ala. 200, 53 South. 174; 190 Ala. 566, 67 South. 234; 200 Ala. 299, 76 South. 65; 195 Ala. 8, 70 South. 261; 201 Ala. 534, 78 South. 888; 202 Ala. 430, 80 South. 814; 171 Ala. 626, 54 South. 549.

Harry T. Smith & Caffey, of Mobile, for appellees.

Affirmative charge was due the defendant on the authority of the former appeal in this case. 201 Ala. 280, 78 South. 56; 182 Ala. 303, 62 South. 519; 189 Ala. 330, 66 South. 624; 141 Ala. 451, 37 South. 799, 109 Am. St. Rep. 45; 156 Ala. 156, 47 South. 338. Every question here presented was settled on former appeal, and is the clear law of the case. 155 Ala. 347, 46 South. 776; 194 Ala. 661, 69 South. 604; 4 C. J. 1100. Such an equitable interest as is here insisted on does not afford color of title. 59 Ala. 597; 63 Ala. 232; 66 Ala. 398; 67 Ala. 526; 69 Ala. 58; 82 Ala. 79, 2 South. 292. The other matters assigned as error were harmless, under the former decisions in this case.

THOMAS, J. The suit is for trespass on land, for the cutting and taking of timber therefrom, and for the conversion of the same. Some phases of the litigation have been considered by the court.

A bill was filed by Norma Aiken and others against B. F. McMillan and others seeking injunction until respondents could establish title to the lands by action at law and to prevent further trespass. Held: (1) That the possession of a holder of land "under a bona fide color of title will be extended to the limits described in the color" (limited by adverse holdings), and possession as so extended is actual and not constructive; (2) where for more than 20 years respondents have been in such possession, "as the character of the land reasonably admitted, of land to which both complainants and respondents had color of title under overlapping grants, the actual possession by complainants of a part of their grant was not extended by their color of title to the land in question, although such actual possession commenced prior to respondent's possession of the particular land in controversy." McMillan et al. v. Aiken et al., 182 Ala. 303, 62 South. 519.

Responding to this adjudication, Aiken brought ejectment, and rendition of judgment was for plaintiff, and McMillan's appeal resulted in reversal and remandment, on the ground that—

The trial court had charged "the jury that plaintiff in this case has shown a perfect legal paper title to the land sued for and is entitled to recover unless the jury are reasonably satisfied from the evidence that the defendants acquired title by having and maintaining open, notorious, exclusive adverse possession of the property for a continuous period of 10 years."

It was said:

"It is established in this court that, when the plaintiff relies upon a conveyance from another, there must be evidence that, at the time of the conveyance, the grantor had the legal title to the lands in question. Baucum v. George, 65 Ala. 259, 267. * * * Our opinion is that the land described in the Baudin-Kennedy instrument has no reference to the land lying south of Bayou Jasamine, formerly Bayou Forbeau. * * * The trial below proceeded upon a different basis. * * *" McMillan et al. v. Aiken et al., 189 Ala. 330, 66 South. 624.

The next trial was on a complaint by McMillan against Aiken and others containing counts for trespass quare clausum fregit, trespass de bonis asportatis, and trover, pertaining to the land on which grew certain timber and the logs were cut and removed therefrom, and it was declared that plaintiff's proof of title by adverse possession was insufficient for submission to the jury, in view of the principle that in case of mixed possession (McMillan owning the timber, and the title to the land being in Crosby) color of title is available to the holder of the true title only. A reversal was the result. Aiken et al. v. McMillan, 201 Ala. 280, 78 South. 56.

The last trial upon counts (1) for trespass on lands, known as the "Francis Girard tract," being in section 44, township 1 north, range 2 east, Baldwin county, Ala.," in the possession of plaintiff," and for cutting timber on said land during the year 1913, (2) for the wrongful taking of the property of plaintiff, viz. "417 gum logs, 27 ash logs, and 18 cypress logs," and (3) for the conversion of said logs, resulted in the giving of the general affirmative charge for defendants.

[1, 2] Several questions are presented on introduction of evidence. In interrogatories propounded by plaintiff to defendant (under the statute) and the answers offered in

evidence by plaintiff, wherein defendant had answered that "Louis Baudin, to whom the land was patented, conveyed the same to Joshua Kennedy, Sr.," it was competent to introduce in evidence said Kennedy's will devising his lands to his children, one of whom was defendant's mother. If the lands were conveyed by Louis Baudin to Joshua Kennedy, Sr., and defendant's mother, sisters, and brother acquired respective interests therein by devise, there was no error in admission of evidence of the respective deeds of Adelaide A. Aiken, Mary E. Barnwell, and W. G. Aiken, purporting to convey to defendant such interests in the lands claimed by Louis Baudin under his Spanish grant, though conveyed by his heirs and legal representatives to Kennedy. The deeds from Alma, Leila, and Adelaide Aiken of date of August 14, 1901, purporting to convey other lands than those on which the suit is based, were improperly admitted. McMillan et al. v. Aiken et al., 189 Ala. 330, 66 South. 624.

[3] Against due objection and exception, defendant introduced in evidence a deed from Louis C. Baudin to Clara A. Aiken (of date February 21, 1870), acknowledged before the probate judge (not recorded), purporting to convey lands described as the "Louis Baudin tract near Stockton, bounded on the north by the Reuben Dyer tract, east by the Tensaw river, south by thirty-first degree of north latitude and west by the township line dividing 1 and 2 east." The grounds of objection were: It was not shown that the grantor "ever was connected in any way with this land," and the deed is not shown to have been recorded and bears on its face evidence of alteration, and was illegal and incompetent testimony. As a witness, one of defendants, having testified that she did not know the handwriting in the deed, and that, if the name of Louis Baudin was erased she did not know anything about it, was asked by plaintiff, "You can see it is rubbed out with a pencil, can't you?" and answered that she thought it just a blot; did not know who rubbed that off with a pencil, or who signed it; that her "mother had this first deed, and then she secured the second one when she had lost or misplaced the first one, not when she died, but in later years," and did not procure it from the same Louis Baudin who signed the first one. It is shown by such admission that the deed was not free from suspicion or unblemished by alteration. It was not self-proving under the statute. The evidence not only failed to show its execution by the grantors, but failed to show that the grantors or predecessors in title had any interest in or possession of the lands sought to be conveyed; failed to show "ancient or modern corresponding enjoyment" or "other equivalent or explanatory proof" of possession by the grantors or predecessors in title. No "acts referable to the title" under this deed are shown before the date of the trespass in question to the land south of Bayou Jessamine. Doe ex dem. Farmer's Heirs v. Eslava, 11 Ala. 1029; Carter v. Doe ex dem. Chaudron, 21 Ala. 72, 91. In the absence of proof of its execution, before a deed at least 30 years old is admissible in evidence as an ancient document, it must not only be found in the proper custody, but must be unblemished by alteration, and otherwise "without marks of suspicion attached to it," and "having nothing suspicious about it." S.-S. S. & I. Co. v. Lollar, 170 Ala. 239, 246, 54 South. 272; White, McLane & Morris v. Farris, 124 Ala. 461, 465, 27 South. 259; Carter v. Doe ex dem. Chaudron, supra.

[4-6] Questions propounded to witnesses Bryant and Roach, respectively, "Who has been in possession of the land next west of you since you have known it?" and "Who has been in possession of that land ever since you have known it?" sought to elicit evidence of the fact of possession of land, a collective fact to which a witness may testify. Eagle & Phœnix Mfg. Co. v. Gibson, 62 Ala. 369, 372; Steed v. Knowles, 97 Ala. 573, 578, 12 South. 75; Driver v. King, 145 Ala. 585, 595, 40 South. 315; Ashford v. McKee, 183 Ala. 620, 629, 62 South. 879; Smith v. Bachus, 195 Ala. 8, 70 South. 261; Long et al. v. Nadawah Lumber Co., 202 Ala. 523, 81 South. 25. No reversible error was committed, however, in declining to allow Bryant to answer, since the question was on rebuttal, and the matter inquired about had been covered by the witness in his direct examination. The answer of Roach, "I have always looked upon Mr. McMillan as being in possession of it," was not the statement of the collective fact of possession, but of a conclusion of the witness.

[7, 8] As a witness, Mr. McMillan testified of the conduct of the timbering business as affecting these lands before and after the same were conveyed to Stockton Lumber Company and thereafter by him as its successor in title that these operations simply continued; that without any stoppage "we ran the timber off of the land once a year generally whenever we had freshet." He was asked, "Was that in accordance with the neighborhood custom there?" and answered, "Yes." Though defendant's objection was sustained, the answer was not excluded. Thereupon the witness was asked: "Did other people get their timber out the same way?" Defendant's objection was sustained without answer, and exception reserved. Witness was permitted to testify:

"The only way they could get it would be when the water rose in the spring. There is generally one time * * * when we can pull the timber out of the swamp, and when the

overflow came we would pull it out of the swamp into deep water. This was the reason for the roads which we cut between high waters. We first went in the swamp * * * and had the timber deadened in the fall before the water rose, * * * generally in the spring anywhere from the middle of January to March. * * * In the meantime the timber had to be deadened long enough for the sap to run out, and when the sap ran out of the tree the tree was cut down and cut off so as to make it convenient to get out as readily as possible when the water rose, and those roads were cut to it before the water rose."

The plaintiff then asked, "Before the water rose the roads were cut?" and was answered:

"Yes, sir; some time—from three to six months of the year. The deadening was very visible, and you could see it as far as you can see a tree, you could see it was deadened; but the roads were not so plain. You could cross some of them to the single trees without noticing them perhaps."

As related to the instant lands and the timber in question, this evidence of timbering operations thereon by plaintiff and his predecessors in title, the questions called for material and competent testimony. The use of land is continuous if it is carried on at such seasons and in such manner as the nature of the lands and its use and operation (in that part of the country) permit. A cessation of its use in accordance with the neighborhood customs and in conformity to some natural condition or agency making necessary that custom would not be an interruption of the possession if, when resumed, it is connected with acts of possession that have gone before in such wise as to become a part or continuation thereof, and not merely several occasional, desultory, or temporary acts of intermittent trespasses. Irwin v. Shoemaker, 88 South. 129;[1] Shepard v. Mount Vernon Lbr. Co., 192 Ala. 322, 327, 68 South. 880; Chastang v. Chastang, 141 Ala. 451, 459, 37 South. 799, 109 Am. St. Rep. 45. See, also, Hooper v. Bankhead & Bankhead, 171 Ala. 626, 634, 54 South. 549; Christopher v. Curtis Attalla Lbr. Co., 175 Ala. 484, 57 South. 837; Birmingham Fuel Co. v. Boshell, 190 Ala. 597, 67 South. 403. The plaintiff's evidence tended to show that appellant had "deadened" and then cut the timber from year to year, dug ditches for floating it across the ridges, cut roads, made surveys of the land, warned off trespassers, and paid taxes on the land during the period of his ownership, and was susceptible of the inference that the possession of his predecessors in title was of like character or evidenced by like acts of ownership or use.

[9-11] When all the evidence was before the jury, at defendant's request was given the charge:

"The court charges the jury that if they believe the evidence they must find a verdict for the defendants."

It is only where there is no evidence tending to establish plaintiff's case that the court may direct a verdict for defendant. Birmingham & A. Ry. Co. v. Campbell, 203 Ala. 296, 82 South. 546, 549; Birmingham Sou. R. Co. v. Harrison, 203 Ala. 284, 82 South. 534, 539; Western Ry. of Ala. v. Mays, 197 Ala. 367, 72 South. 641; L. & N. R. R. Co. v. Jenkins, 196 Ala. 136, 72 South. 68; Crandall-Pettee Co. v. Jebeles & Colias Conf. Co., 195 Ala. 152, 69 South. 964; Amerson v. Coronoa Coal & Iron Co., 194 Ala. 175, 69 South. 601; Morrison v. Clark, 196 Ala. 670, 72 South. 305; Tobler v. Pioneer Min. & Mfg. Co., 166 Ala. 482, 517, 52 South. 86. If there is evidence reasonably affording an inference adverse to the right of recovery by the party asking the general charge (Bowen v. Hamilton, 197 Ala. 418, 73 South. 5; N., C. & St. L. Ry. v. Crosby, 194 Ala. 338, 70 South. 7; B. R., L. & P. Co. v. Enslen, 144 Ala. 343, 350, 39 South. 74), or from which the jury might draw an inference adverse to such party, the general charge should not be given (Ringeman v. Wiggs Bros., 146 Ala. 685, 40 South. 323;[2] Amerson v. Coronoa Coal & Iron Co., supra). The jury may draw such inferences from the facts proved as they believe reasonable (Jones v. Bell, 201 Ala. 336, 77 South. 998; N., C. & St. L. Ry. v. Crosby, supra; Amerson v. Coronoa Coal & Iron Co., supra; M., J. & K. C. R. R. Co. v. Bromberg, 141 Ala. 258, 284, 37 South. 395; B. R., L. & P. Co. v. Enslen, supra; McCormack Harvesting Mach. Co. v. Lowe, 151 Ala. 313, 44 South. 47; W. U. T. Co. v. Brazier, 10 Ala. App. 308, 65 South. 95); and if in any aspect of the case the plaintiff was entitled to recover, and the jury believed the evidence tending to support such phase, the general charge should not be given for defendant (Card Lumber Co. v. Reed, 202 Ala. 322, 80 South. 404; L. & N. R. Co. v. Hayward, 201 Ala. 9, 75 South. 22; Jones v. Bell, supra; Aultman & Co. v. Fletcher, 110 Ala. 452, 457, 18 South. 215); and in determining the propriety of the general charge the evidence offered by the party against whom it is given must be accepted as true. McGowin Lbr. & Exp. Co. v. McDonald Lumber Co., 186 Ala. 580, 586, 587, 64 South. 787; Hines, as Director General, v. Cooper, post, p. 70, 88 South. 133.

[12] Thus we are brought to a consideration of the question of the true ownership of the title, as regards color of title and adverse possession, in case of mixed possession; the title to the land being in Crosby and that of the timber thereon in plaintiff. Attempt-

---

[1] Ante, p. 13.

[2] Reported in full in the Southern Reporter; reported as a memorandum decision without opinion in the Alabama Reports.

ing to respond to this phase of the case, defendant offered in evidence a deed from a Louis Baudin and wife to Clara Aiken and Joshua Kennedy, Jr., of date of July 23, 1849, to which due objection was made because it was unintelligible, bore on its face evidence of having been altered, purported to have been signed by some one other than Louis Baudin, by power of attorney, and the power of attorney was erased. Objection was rested on the further ground that the defendants, in answer to interrogatories propounded under the statute by plaintiff, said they claimed title by "heirship from their grandfather, Joshua Kennedy." Replying to the objections thus made by plaintiff to the introduction of said deed, the court stated:

"I don't know whether it is my eyesight or not, but I can't read this. I cannot make out anything here in the writing part of it."

Defendant stated, "It has been recorded and I can get a certified copy," and thereupon offered in evidence the record of Baldwin county showing the instrument of date July 23, 1849, to have been recorded on May 21, 1918. The bill of exceptions does not show that the original of this deed was offered in evidence. The authenticated copy thereof being admitted in evidence, a jury question was presented for two reasons, viz.: (1) Defendants had answered, in response to interrogatories propounded under the statute by plaintiff, that the source of their title was "by heirship from a grandfather, Joshua Kennedy, Sr." (not from the grantees in said deed), and such answer was offered in evidence by plaintiff, and presented a material conflict in evidence as to the source of defendants' title; (2) this deed purported to have been executed on July 23, 1849, by Louis Baudin, when plaintiff's evidence tended to show that said Baudin was not in life at that date. The witness Modiste Voltaire, a great-grandchild of said Baudin (who had the Spanish claim), testified that he had died before 1843. This was confirmed by documents offered in evidence. A material conflict in the evidence was presented as to the genuineness of the deed by Mr. Baudin. Did said Baudin die before 1843, and therefore did not sign the deed of date 1849? Under such conflict in evidence, or reasonable inferences therefrom, as to the true source of defendant's title and of the genuineness of this deed purporting to have been signed by Baudin and wife in 1849, and as affecting appellee's title thereunder, or her title or claim of color of title thereunder to the Louis Baudin tract of land south of Jessamine Bayou, and of her right to cut and remove timber therefrom in 1913, were questions for the jury, and the general affirmative charge was improperly given at defendant's request in writing.

[13] The title to the timber being in plaintiff, McMillan, and the title to the land upon which the timber grew being in Crosby (by respective deeds from Stockton Lumber Company), plaintiff sought to connect his timber title and the title to the fee in Crosby with the Louis Baudin Spanish claim and grant, governmental surveys, and patent thereof pursuant to the report of Commissioners Hazzard and Owen, by offering a warranty deed from Louis Beaudin and others in which it was recited that "all the heirs and legal representatives of Louis Beaudin, deceased," were the grantors to Thomas Greig and Joaquin Eslava. The deed was of date June 3, 1845, acknowledged same date, and duly recorded August 29, 1845, to which, by mesne conveyances, plaintiff's and Crosby's title were sought to be connected. This deed, of date June 3, 1845, was rejected by the court and due exception reserved to its exclusion from the evidence. The description of the lands as therein contained was:

"All that tract or parcel of land situated in the county of Baldwin, bounded and described as follows, to wit: Bounded on the north by Bayou Jessamine and extending down towards the mouth 20 arpens, on the west by Bottle Bayou, on the south by the said Bayou Jessamine, and on the east by the River Tensaw—which said tract of land was confirmed to the parties of the first part by the second section of the act of Congress of the 3d of March, 1819, agreeably to the report of the Commissioners John B. Hazzard and John Henry Owen."

The confirmation of the claim of Louis Baudin, pursuant to the act of Congress of March 3, 1819 (3 Stat. 528), agreeably to the report of the Commissioners John B. Hazzard and John Henry Owen, to the "legal representatives of Louis Baudin," was for 1,280 acres of land on the Tensaw river, to be platted, surveyed, and confirmed by the United States. The recitals in the report of said commissioners and that contained in the deed that grantors were "all the heirs and legal representatives of Louis Beaudin, deceased," are confirmatory of the testimony of witness Voltaire (heretofore adverted to) that her great-grandfather had died before 1843. Not being in life in 1849, he did not join with Mary Baudin in a conveyance of the land in question to Joshua Kennedy, Jr., and Clara Aiken as purported by the deed in evidence of date July 23, 1849, and recorded May 21, 1918. Such was the reasonable inference that might have been drawn by the jury from such conflicting tendencies of evidence, and emphasized the error in giving the affirmative charge.

Since the case must be retried, we inquire: Was there error in excluding from evidence plaintiff's deed from all the heirs and legal representatives of Louis Beaudin, deceased, of date June 3, 1845? The fact that said

deed offered by plaintiff was by the "heirs and legal representatives of Louis Beaudin, deceased," and was signed Louis Beaudin by one of the grantors, does not render the deed inadmissible as evidence. As we have noted, Modiste Voltaire had testified that she was born in 1843; that her great-grandfather, Louis Baudin, was dead when she was born (Duncan v. Watson, 198 Ala. 180, 73 South. 448); that she did not know how the younger members of the family pronounced the name, but that "they spell it two ways" and that her "people spell the name 'Baudan.'" This evidence on the part of plaintiff was offered before the deed was rejected. On its attempted introduction, plaintiff's counsel stated to the court that it was offered in connection with the testimony to the effect that the grantees in said deed were dead and left as the only heirs at law the grantors or predecessors in title to plaintiff, and in connection with the certificate (in evidence by defendant) signed by Commissioners Hazzard and Owen pertaining to the Baudin claim or lands. The certificate thus referred to and introduced in evidence by defendant (abstract from the American State Papers), being the report of John B. Hazzard and John Henry Owen, confirmed claim to the land (subject to location or survey) under the Spanish permit of June 28, 1789, to original claimant, Louis Baudin, and then claimants, described by said commissioners as the "legal representatives of Louis Baudin"; the quantity of land being indicated as, "By the second section of the act of 3d of March, 1819, this tract is entitled to confirmation for 1,280 acres only." This ancient deed (June 3, 1845), reciting, as it did, that the grantors were "all the heirs and legal representatives of Louis Beaudin," with the other evidence for plaintiff, would have been the basis for the reasonable inference that such recital sufficiently identified the claimants and grantors as "all the heirs and legal representatives of Louis Beaudin, deceased," to which the land in question below Bayou Jessamine (formerly Bayou Forbeau) was confirmed under the provisions of the act of Congress, according to the report of Commissioners Hazzard and Owen and plat and survey made by the United States authorities. As we have observed, when the report of Commissioners Hazzard and Owen is referred to and considered with the plats and surveys made by the United States or by its authority (on file in the Land Office), and with the patent issued to the legal representatives of Louis Beaudin, and such evidences of title are considered with the testimony of Modiste Voltaire that her said great-grandfather (Louis Baudin) was dead before the date of the execution of the deed in 1845, and that his descendants adopted different ways of spelling the surname "Baudin," said ancient deed was relevant and material evidence. It was admissible under the authorities (White, McLane & Morris v. Farris, supra; S.-S. S. & I. Co. v. Lollar, supra), and the recitals, being free from suspicion, are evidence of the facts purported thereby (Jordan v. McClure Lbr. Co., 170 Ala. 289, 315, 54 South. 415; Kidd v. Browne, 200 Ala. 299, 303, 76 South. 65). In Fulkerson v. Holmes, 117 U. S. 389, 6 Sup. Ct. 780, 29 L. Ed. 915, it was declared that recitals in an ancient deed that grantors are heirs of a certain ancestor are prima facie evidence of the truth of such recitals. Harman v. Stearns, 95 Va. 58, 63, 27 S. E. 601; Carver v. Jackson, 4 Pet. 1, 7 L. Ed. 761; Crane v. Morris, 6 Pet. 598, 8 L. Ed. 514.

[14, 15] The identity of names is prima facie evidence of the identity of persons and is for the jury to consider. Boyd v. State, 150 Ala. 101, 43 South. 204; Munkers v. State, 87 Ala. 94, 6 South. 357; 1 Greenl. on Ev. (16th Ed.) § 43a. The law allows great latitude in spelling and pronouncing proper names, and, if names are idem sonans, a variance in the spelling is immaterial, and a slight difference in pronunciation of them is unimportant. The exclusion from evidence of this deed (Louis Baudin and others to Thomas Greig and Joaquin Eslava, of date June 3, 1845) may not be justified by reason of the different spelling of the name, as "Baudin," "Beaudin," and "Baudan." At least a jury question as to identity of said grantors with the heirs and legal representatives of Louis Beaudin, deceased, was presented. In the recent decision of Reichert v. Sheip, 204 Ala. 86, 88, 85 South. 267, 268, it was said:

"In the testimony * * * enumerating the heirs of Louis Durette, the name is spelled 'Durette,' while in the patent to his heirs it appears 'Duret.' * * * This difference in spelling would not justify the exclusion of the deed, for the utmost the defendants could claim would be a submission of the question for the consideration of the jury."

See Underwood v. State, 72 Ala. 220; 29 Cyc. 272, 277; 6 Encyc. of Ev. 917.

[16, 17] The exclusion of this deed may not be justified on the ground that it was void for uncertainty in description of the land conveyed. A patent ambiguity only appeared on its face as to its boundary by Bayou Jessamine and the extent of its frontage on that bayou. Chambers v. Ringstaff, 69 Ala. 140. We take judicial knowledge of the several government surveys of the lands in this state on the Tensaw river and Bayou Jessamine (Forbeau) and in St. Stephens land district (Hunt v. Jones, 203 Ala. 541, 84 South. 718), of the location and areas of the Louis Baudin and Francis Girard claims as surveyed and platted by the constituted authorities of the United States shown by the records in the public land office, and of the fact and extent of the confliction of the

two claims. The description in the ancient deed was sufficient to convey grantors' interest to that part of the Louis Baudin claim to the land bounded on the west by Bottle Bayou (or creek), on the east by the Tensaw river, and on the south by Bayou Jessamine (Forbeau), as "confirmed to the parties of the first part by the second section of the act of Congress of the 3d of March, 1819, agreeably to the report of the Commissioners John B. Hazzard and John Henry Owen." When the description in the deed is referred to the report of said commissioners (Hazzard and Owen), to the government surveys and plats pursuant thereto, and the patent issued thereon, no other lands north of the north prong (extending from northwest to southeast)—between Tensaw river and Bottle creek or bayou—of Bayou Jessamine (Forbeau) were embraced therein. That the deed describing the land as bounded on the north and on the south by said Bayou Jessamine merely presented a latent ambiguity is illustrated and explained by the fact (apparent from the plat books filed in the office of the surveyor general in Florence, Ala., March 23, 1844, examined and approved by the surveyor general of St. Stephens land district, Ala.) that Bayou Jessamine (Forbeau) had two prongs or forks, a north prong, extending as aforesaid and touching Tensaw river to the west and Bottle Bayou on the east, and a south prong running through the west part of the "confliction" with a varying course, viz. northwest, thence northeast to its confluence with the north prong of the bayou, and thence northwest to Bottle Bayou (creek), or southeast to Tensaw river. All of the lands thus conveyed were south of the north prong of the bayou (that extending from Tensaw river to Bottle Bayou), and some parts of said lands were north of the south prong of that bayou and bounded on the south by (the south prong of) Bayou Jessamine. In the map and survey of the Francis Girard tract the "south prong of Bayou Forbeau" is referred to as related to the respective conflicting claims of Girard and Baudin, as follows (after detailed survey from the starting point):

"Thence due south 80.00 to a post on the line of demarcation (the township line); thence due west with said line at 31.04 crossed the south prong of Bayou Forbeau .90 wide bearing N. by W. 33.24 crossed the range at the south-east corner of section No. 36, it being also the west boundary line of the claim of Louis Baudin," etc.

To be more specific of the course of the several prongs of Bayou Jessamine (Forbeau), as related to the Francis Girard tract and that of the "legal representatives of Louis Beaudin," and the confliction of the two claims, the map of date May 19, 1845, examined and approved by the surveyor general of public lands in Alabama, of township 1 north, range 2 east, "representing the private claims and their connection with the public surveys as finally settled by the register and receiver of the land office at St. Stephens, Ala., acting as commissioners for the settlement of private land claims, under authority of the act of Congress approved May 8, 1822," the reporter will set out that part of Exhibit A on page 90 of the transcript, south and west of Tensaw river, since the map heretofore exhibited (189 Ala. 335, 66 South. 624) fails to show the south prong of the bayou as related to the respective claims of the Louis Baudin tract and the Francis Girard tract in sections 40, 44 and 49.

This map shows parts of the lands described in the deed of June 3, 1845, to be west and north of the meander of the south prong of the bayou about where and after it crossed the range line (between 1 and 2 east, St. Stephens land district) as it proceeded to confluence with the north prong (or the bayou as connecting Tensaw river and Bottle Bayou), and that a part of the lands so conveyed was east and north of where the south prong of the bayou touched the southwest corner of the Louis Baudin claim and the southeast part of the Francis Girard claim, and where and as the bayou flowed north and west. All the maps show that the township line was the southern boundary of both of said claims in sections 40, 44, and 49. Such were the inferences of fact that the jury may draw on inspection of the maps and the documents in evidence, in explanation of the latent ambiguity contained in the deed of June 3, 1845, describing the lands conveyed as north and south of the bayou in question, the north prong flowing across the northern part of the "confliction," and the south prong as we have indicated.

[18, 19] The further latent ambiguity of description in the deed (June 3, 1845), when referred to and aided by the plats and sur-

veys having application, as "extending down towards the mouth (of Bayou Jessamine) twenty arpens," was not sufficient to justify its rejection as evidence. This was a declaration by the parties (in language well understood at the time and in that locality, of territory acquired by the United States from Spain) of the frontage of a Spanish claim on its north boundary touching the south bank of the north or east and west prong of Bayou Jessamine (Forbeau) "twenty arpens." An "arpen" or "arpent" ("arpens") is defined as:

"A measure of land of uncertain quantity, mentioned in Domesday and other old books; by some called an 'acre,' by others 'half an acre,' and by others a 'furlong.' * * * A French measure of land, containing one hundred square perches, of eighteen feet each, or about an acre." Black's Law Dict. p. 89.

Mr. Bouvier says:

"Arpennus. A measure of land of uncertain amount. It was called arpen also. * * * The measure was adopted in Louisiana. * * * Land containing a French acre." Volume 1, Law Dict. p. 239.

The suburb of St. Mary, adjoining the city of New Orleans, is upon a tract of land described as containing "thirty-two arpens, or French acres, of front on the river." Cause of the New Orleans Batture, 4 Hall's, Am. Law J. 518. And in Strother v. Lucas, 6 Pet. 763, 764, 767, 768, 8 L. Ed. 573, a suit to recover a tract of land described as containing "two arpens of land in front and forty arpens in depth, in and adjoining the city of St. Louis," the word "arpen" was treated as indicating lineal measure; and such was its use in United States v. Le Blanc, 12 How. 435, 436 (13 L. Ed. 1055). It has frequently happened that the word "arpen" has been used when an acre was meant, as:

"A certain plantation, containing 35 arpens, in front on Bayou Goula. * * *" Randolph v. Sentilles, 110 La. 419, 34 South. 587.

"In 1794 Don Zenon Trudeau, Spanish Lieutenant Governor of Upper Louisiana, 'conceded' to Joseph Brazeau out of the 'royal domains' a tract of 4 by 20 arpens on the Mississippi river about 2 miles from 'the town of St. Louis.'"

Of the description the Chief Justice said:

"An arpent is a land measure varying in dimension from .84 of an acre to 1.4 acres and to 1.28 acres accordingly as the arpent meant is an arpent de Paris, an arpent commun, or an arpent d'ordonnance. In 1798 this same Joseph by deed conveyed to Louis Lebeaume (spelled in more ways than one) the same concession, reserving therefrom to himself 4 by 4 arpents in the southern part 'to be taken at the foot of the hillock.'" Troll v. City of St. Louis, 257 Mo. 626, 648, 168 S. W. 167.

See Tyler v. Magwire, 84 U. S. (17 Wall.) 253, 275, 281, 293, 21 L. Ed. 576.

As to lineal measure, the words "twenty arpens" are used as a part of the description in the deed and were between 1,200 and 1,400 yards of frontage on the south side of the north prong of Bayou Jessamine. And this latent ambiguity may be explained by foregoing inferences the jury may draw.

[20] Though there was no other south line contained in the description of the deed of June 3, 1845, it was not void on this account. From the whole description, the intention of the grantors was to convey of the Louis Baudin claim that part south (of the north prong) of Bayou Jessamine, and east of Bottle Bayou (or creek), and west of the Tensaw river and south to the limit of their claim or interest as indicated in the surveys made in the general land office pursuant to the report of John B. Hazzard and John Henry Owen as commissioners, which was the township line. This south line is of easy ascertainment, as the south boundaries of the Louis Baudin and Francis Girard claims, as reported, platted and surveyed by the United States authorities, were the township line. The blanket description employed (when the latent ambiguities are explained by the evidence as to the land owned by Louis Baudin and his heirs or legal representatives in said Spanish claim) was sufficient to convey title to Thomas Greig and Joaquin Eslava. Wright v. L. & N. R. Co., 203 Ala. 118, 82 South. 132, 134 (3); Jenkins v. Woodward Iron Co., 194 Ala. 371, 69 South. 646; Angel v. Simpson, 85 Ala. 53, 3 South. 758; Meyer Bros. v. Mitchell, 75 Ala. 475; Chambers v. Ringstaff, 69 Ala. 140; Nolen v. Henry, 190 Ala. 540, 545, 67 South. 500, Ann. Cas. 1917B, 792; Lodge v. Wilkerson, 165 Ala. 302, 51 South. 609; Minge v. Green, 176 Ala. 343, 58 South. 381; L. R. A. 1916C, 1127, note. And plaintiff's title was connected by the evidence with this conveyance.

Plaintiff having shown a search through all the papers of the Stockton Lumber Company for the deed to J. Pollock from G. W. Robinson and B. F. McMillan (all the members of the firm composing Robinson & McMillan) and their wives, the duly authenticated copy thereof from the record in the probate office of Baldwin county, Ala., of date August 21, 1884, was admitted in evidence. The deed conveyed a large tract of land, embracing ("Girard tract, Sec. 44, T. 1 N., R. 2 E., 265.92 acres") the lands in question.

Plaintiff then offered to introduce in evidence a written instrument purporting to be a transfer of the right, title and interest of said Pollock or J. Pollock & Co. in said land (held by J. Pollock as security for the debt of Robinson & McMillan), concluding with the following blanket description:

"We, the said J. Pollock & Co., have bargained, sold, and conveyed, and by this instru-

ment do bargain, sell, and convey unto Stockton Lumber Company all our right, title, and interest in and to the lands so held by Jacob Pollock and to the debt of said Robinson and McMillan to us as aforesaid. In witness whereof we, the said J. Pollock & Co., have hereunto set our hand and seal this 13th day of July, A. D. 1887. [Seal.] J. Pollock & Co. Witnesses: R. H. Scales. M. L. Gans."

[21] Objection was made on the ground that it was not shown that the grantors had title to the land; it being limited to an equity. Plaintiff stated that said writing was offered as a "muniment of title," and he expected to show possession thereunder and claim of title to the land in question, "entry under it, and claim of ownership * * * as color of title," and later sought to show (as he should have been permitted to do) that the indebtedness in question to Pollock was fully paid by McMillan or his predecessors in title. The court sustained defendant's objection to the introduction of said written instrument, and plaintiff excepted. It should have been admitted as a link in plaintiff's title from and through Stockton Lumber Company, a corporation, to foregoing conveyances and source of his title. The blanket description employed in this conveyance was sufficient to convey the interest of grantors in the 17,150 acres of the land theretofore conveyed by Robinson & McMillan to Jacob Pollock (doing business as J. Pollock & Co.) and to pass title. Wright v. L. & N. R. Co., supra. That is to say, the instrument was competent in connection with the deed from Jacob Pollock as trustee to Stockton Lumber Company, of date March 3, 1891, reciting the indebtedness of Robinson & McMillan, and the full discharge by payment.

[22] We are of opinion that the instrument by J. Pollock & Co. of date July, 1887, was also competent as muniment of title as related to the transfer of said properties, the subject of conveyance from Robinson & McMillan and their wives to J. Pollock (1884), conveyed by J. Pollock & Co. (July 13, 1887), and by J. Pollock as trustee to Stockton Lumber Company (March 13, 1891), and as explaining the right of that corporation to convey the fee to Crosby and the timber interest therein to McMillan. There was error in the exclusion of said instruments.

On introduction of evidence, plaintiff showed by his son, who was his attorney, that he turned over to him his papers having reference to the lands in question; that they had searched his office and safe and every place "they could think of for" the papers (such places being where plaintiff ordinarily kept his papers and all his deeds); and after such examination of the places in which his papers were kept, in search of a conveyance of the Stockton Lumber Company and of its assets to the plaintiff, that he found a book of minutes of that corporation, but it only contained some of the minutes of said corporation.

[23, 24] The records of a corporation, including its minutes or other record of the acts of its incorporators, stockholders, members, directors, or trustees, are generally admissible as prima facie evidence in favor of and against the corporation and its stockholders or members "on questions relating to the creation and organization of the corporation, performance of charter or statutory requirements, corporate proceedings after organization, and other like matters." Terry v. Birmingham Nat. Bank, 93 Ala. 599, 608, 9 South. 299, 30 Am. St. Rep. 87; Bank, etc., v. Comegys, 12 Ala. 773, 46 Am. Dec. 278; Jones, Adm'r, v. Trustees Florence W. Univ., 46 Ala. 626; Duke v. Cahawba Nav. Co., 10 Ala. 82, 44 Am. Dec. 472; Mayor, etc., v. Wright, 2 Port. 230; 2 Cook on Corp. (6th Ed.) § 714, note 5, pp. 2226, 2227; 14 Corp. Jur. pp. 376, 377; 17 Cyc. 401; Highland T. Co. v. McKean, 10 Johns. (N. Y.) 154, 6 Am. Dec. 324; Vawter v. Franklin College, 53 Ind. 88; 12 Cent. Dig. Corp. § 118; 20 Cent. Dig. Ev. §§ 1400, 1352; 46 Cent. Dig. Trial, § 98; Angell & Ames on Corp. § 506. Where no written minutes are kept of the proceedings of stockholders, they may be proved by parol; so where the original minutes are lost or destroyed. Birmingham Ry. & Electric Co. v. Birmingham Traction Co., 128 Ala. 110, 29 South. 187; Franklin Trust Co. v. Rutherford, Boiling Springs & Carlstadt Electric Co., 57 N. J. Eq. 42, 41 Atl. 488; Murray v. Beal, 23 Utah, 548, 65 Pac. 726; Hendrie & Bolthoff Mfg. Co. v. Collins, 13 Colo. App. 8, 56 Pac. 815; Ill., etc., Ass'n v. Plagge, 177 Ill. 431, 53 N. E. 76, 69 Am. St. Rep. 252; Pigg v. Stacey (Ky.) 49 S. W. 1065; Thistlethwaite v. Pierce, 30 Ind. App. 642, 66 N. E. 755; Braxmar v. Stanton, 110 App. Div. 167, 96 N. Y. Supp. 1096; Garmany v. Lawton, 124 Ga. 876, 53 S. E. 669, 110 Am. St. Rep. 207; Ismon v. Loder, 135 Mich. 345, 97 N. W. 769; Blanton v. Kentucky Co. (C. C.) 120 Fed. 318; In re Bank, etc., 109 Wis. 672, 85 N. W. 501; Masonic Mut. Ben. Ass'n v. Severson, 71 Conn. 719, 43 Atl. 192; Hudson v. Parker Mach. Co., 173 Mass. 242, 53 N. E. 867; Zihlman v. Cumberland Glass Co., 74 Md. 303, 22 Atl. 271.

Witness B. F. McMillan, Jr., should have been permitted, against defendant's objection, to answer the question:

"State whether or not you ever saw the original minutes of the Stockton Lumber Company which authorized the sale of the company's assets to B. F. McMillan, Sr.?"

[25] The deed from Stockton Lumber Company to B. F. McMillan, Sr., purporting to convey all its assets was sufficient to convey that corporation's title or interest in the land in question to McMillan (Wright v. L.

& N. R. Co., supra) if executed with due authority.

The judgment is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.