(95 South. 886)

### CHANDLER v. BIRMINGHAM NEWS CO.
(6 Div. 743.)

(Supreme Court of Alabama.    April 5, 1923.)

**1. Libel and slander ☞101(1)—Burden on plaintiff to show publication referred to him.**

In an action for libel, the burden is on plaintiff to show that the publication was of and concerning him.

**2. Libel and slander ☞105(4)—Evidence held admissible to show publication not aimed at plaintiff.**

Evidence tending to show that the publication was not intended of and concerning plaintiff *held* admissible.

**3. Libel and slander ☞105(4)—Evidence admissible tending to identify person referred to in libelous writing.**

In an action by a railway mail clerk for libel based on defendant's letter to the chief clerk of the railway mail service, who was a witness for plaintiff, other letters and telegrams written by such witness to the defendant were admissible, as shedding light on his direct testimony as to whether plaintiff was the person referred to in the alleged libel.

**4. Libel and slander ☞123(5)—Whether libel referred to plaintiff held jury question.**

In an action by a railway mail clerk for libel, where the alleged libelous letter addressed to the chief clerk of the railway mail service, when construed in connection with attached telegrams, was indefinite and uncertain as to what particular mail clerk was intended to be criticized, the question was for the jury to determine whether the letter was written of and concerning some other clerk.

**5. Trial ☞194(14)—Instruction that publication was libelous per se properly refused as misleading, where evidence was conflicting as to whether publication was intended to refer to plaintiff.**

A charge that the publication complained of was libelous per se was properly refused as calculated to mislead the jury, where the evidence was such that a jury question was presented, whether the publication was intended to refer to plaintiff, and from the instruction the jury would naturally have inferred that the court meant that the publication was libelous as to plaintiff.

**6. Trial ☞143—General affirmative charge with hypothesis not given where evidence conflicting on material issue.**

The court properly refused the general affirmative charge with hypothesis, as such charges should not be given when the evidence is in conflict as to a material matter in issue, by positive proof or by reasonable inferences that may be drawn therefrom.

**7. Libel and slander ☞124(1)—Instructions that plaintiff could not recover unless publication shown to refer to him, proper.**

In an action for libel, instructions that plaintiff could not recover unless the alleged libelous publication was directed against him were properly given, and under the evidence correctly stated the law.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by Calvin V. Chandler against the Birmingham News Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Charges F, G, and E, given for defendant, read:

"F. Unless the charges in the letter of February 7, 1918, were directed against plaintiff then this letter does not afford him a basis of recovery in this cause.

"G. If you believe from the evidence that the letter of February 7, 1918, was directed at the mail service solely and not at plaintiff then such letter cannot afford plaintiff a basis for recovery in this case.

"E. Unless the letter of February 7, 1918, was of or concerning plaintiff then such letter affords plaintiff no basis for recovery."

Miller & Graham, of Birmingham, for appellant.

Any language, whether spoken or written, imputing a lack of due qualification or a dereliction of duty to an officer or employé, is actionable per se. 25 Cyc. 343; Gaither v. Advertiser Co., 102 Ala. 458, 14 South. 788; Ware v. Clowney, 24 Ala. 707; Newell on Slander & Libel (3d Ed.) 200. The letter complained of was not susceptible of the construction sought to be placed thereon by defendant's given charges F, G, and E, and the giving of said charges was error. B. M. R. Co. v. T. C. I. Co., 127 Ala. 137, 28 South. 679; Barron v. Barron, 122 Ala. 194, 25 South. 55; Fowler v. Pritchard, 148 Ala. 261, 41 South. 667; Coker v. Payne (Ala.) 39 South. 1025; Wisdom v. Reeves, 110 Ala. 418, 18 South. 13; Marks v. Robinson, 82 Ala. 69, 2 South. 292; Interstate Am. Co. v. Martin, 8 Ala. App. 481, 62 South. 404; Tutwiler C. C. & Iron Co. v. Nichols, 145 Ala. 666, 39 South. 762; Id. 146 Ala. 364, 39 South. 762, 119 Am. St. Rep. 34. Facts and circumstances which, if proved, are incapable of affording a just, reasonable inference or presumption in relation to a material fact involved in the issue on which the jury are to pass, are irrelevant and inadmissible. Karr v. State, 106 Ala. 1; 17 South. 328; Governor v. Campbell, 17 Ala. 566; State v. Wisdom, 8 Port. (Ala.) 511; Steen v. Swadley, 126 Ala. 616, 28 South. 620; Seals v. Edmondson, 71 Ala. 509; Birmingham Nat. Bank v. Bradley, 108 Ala. 205, 19 South. 791; Cofer v. Scroggins, 98 Ala. 342, 13 South. 115, 39 Am. St. Rep. 54; Moore v. Nashville, & C. R. Co., 137 Ala. 495, 34 South. 617; Brown v. Prude, 97 Ala. 639, 11 South. 838. A charge based on a hypothetical state of facts directly opposed to the evidence should not be given. Carlisle v. Hill, 16 Ala. 398; Selma, etc., Co. v. Campbell, 158 Ala. 438, 48 South. 378.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Percy, Benners & Burr, of Birmingham, for appellee.

It is for the court to say whether the meaning charged by the innuendo can be legally attributed to the language complained of, and for the jury to decide whether the intent charged be true in fact. Gaither v. Advertiser Co., 102 Ala. 458, 14 South. 788; Wofford v. Meeks, 129 Ala. 349, 30 South. 625, 55 L. R. A. 214, 87 Am. St. Rep. 66; Hendrix v. Mobile Register, 202 Ala. 616, 81 South. 558. A charge only that a man was guilty of a neglectful act on one particular occasion is not libelous per se, and is not actionable without proof of special damage. Ware v. Clowney, 24 Ala. 707; Rogers v. Kline, 56 Miss. 808, 31 Am. Rep. 389; 17 R. C. L. 308. A charge will be refused, if it requires an examination of the pleadings by the jury. A. G. S. v. McWhorter, 156 Ala. 269, 47 South. 84. Admission of evidence will not be reviewed, where other evidence to the same effect is admitted without objection. Hutto v. Stough, 157 Ala. 566, 47 South. 1031.

MILLER, J. Calvin V. Chandler, plaintiff and appellant, sues the Birmingham News Company, a corporation, appellee, for damages for the publication of a libel concerning appellant.

The case was tried on count 1, and the plea of general issue filed to it. The jury returned a verdict in favor of the defendant, and from a judgment thereon by the court plaintiff has prosecuted this appeal.

Count 1 avers that defendant falsely and maliciously published of and concerning the plaintiff on February 7, 1918, at Birmingham, Alabama, in a letter, matter with intent to defame the plaintiff, which reads as follows:

"The Birmingham News, Birmingham, Ala.

"Feb. 7, 1918.

"Chief Clerk, R. M. S., City.

"My dear Sir: I beg to call your attention to the most flagrant lack of service I have ever yet known in the R. M. Dept. It is so flagrant that I purpose filing my claim with P. O. Department at Washington, D. C., for full papers thus short. And I am also writing making my claim through Senator Bankhead and making report too for investigation through Senator Underwood. In other words, I purpose these papers shall be paid for by the R. M. clerk at fault in failing to make this delivery and if I do not get payment such clerk will understand that this paper will not countenance such negligence no matter how green he may be or how many hay seed he may wear in his hair.

"This condition is simply beyond my comprehension in twenty-five (25) years' experience with R. M. S. all over this section.

"Very truly yours, The Birmingham News,

"E/L W. S. Dunston, Circulation Manager.

"P. S. Please return this telegram by bearer, so I may use it with my action with Dept. at Washington, D. C. W. S. D."

209 ALA.—14

This count avers that attached to the letter was a telegram of Elgin Johnson, of Anniston, to the defendant, stating, in substance, that the papers of February 5, 1918, were not received by him, at Wellington, on February 5, 1918, and also another writing labeled "complaint of delayed papers" of February 5th. The count alleges that on February 5, 1918, plaintiff was a railway mail clerk and had charge of the United States mail on the Seaboard Air Line Railway train running from Birmingham, Ala., to Atlanta, Ga., which had been his business for many years previous, and that the words so published by defendant were intended by the defendant to mean, and were understood by the persons reading said words to mean, that plaintiff was a negligent and incompetent mail clerk.

[1, 2] The court did not err in the admission of evidence with reference to complaints other than that of February 5, 1918; the other specific complaint mentioned in the evidence being that of February 6, 1918. The plaintiff avers that the letter of February 7, 1918, written by defendant and delivered to Leonard Poole, the chief clerk of the Railway Mail Service, was "of and concerning him." The burden of this proof rested on him, and any evidence which tended to show it was not intended "of and concerning him," was material and revelant to the issue. There were five railway mail clerks who at that time made the run from Birmingham to Atlanta, making such runs at different times. The plaintiff ran on the train which left Birmingham on the afternoon of February 5, 1918, for Atlanta, and a different mailing clerk ran on the train from Birmingham to Atlanta on the afternoon of February 6, 1918.

The defendant sent its papers for Anniston on the outside of the mail at that time in the United States mail to Wellington on the afternoon train, and from there they were sent to Anniston by automobile. Elgin Johnson was defendant's agent at Anniston. On February 5, 1918, this train left Birmingham one hour and twenty minutes late, reaching Wellington, with the papers of defendant, about five hours late. The boys with the automobile did not wait for the delayed train, and the papers were put off the train by plaintiff at Wellington; not being received by Elgin Johnson until much later, probably the next day. At 12:50 p. m. February 6, 1918, Johnson telegraphed the defendant as follows: "No papers received last night, send 525 Wellington, 25 to Anniston." This is the telegram mentioned in the complaint; and on February 6, 1918, at 6 p. m., Elgin Johnson wired defendant, "No papers last night 125 short tonight." The following day, on February 7, 1918, the letter mentioned in the complaint was written and mailed or delivered to the chief clerk of the Railway Mail Service, and the undisputed evidence shows the

original of each telegram was attached to the letter. In the complaint the plaintiff refers to one and objects and excepts to the introduction of the other, which was properly admitted in evidence.

Did the letter of February 7, 1918, on which the alleged libel rests, refer to the clerk on the train of February 5th, or the clerk on the train of February 6, 1918? The plaintiff was on the former, and a different clerk was on the latter. The telegrams in regard to each train were attached to the letter of February 7th, which letter states: "I purpose filing my claim * * * for full papers thus short." It further states: "I purpose these papers shall be paid for by the R. M. clerk at fault in failing to make this delivery," etc. The letter refers to "papers short," and only one telegram, that of February 6, 1918, refers to papers short, which states "125 short tonight." The plaintiff was not the clerk on that train. Leonard Poole, witness for the plaintiff, the chief clerk of the Railway Mail Service, to whom the letter was written, testified:

"The two telegrams that Mr. Dunston refers to there were sent to the office by messenger. * * * I saw the telegrams that were sent with that complaint. I do not know where they are now. They were sent to Mr. Dunston the same day they were received, by the messenger that they were received. It was sent back to Mr. Dunston by the same messenger by which it was received, immediately after its receipt, together with our letter in which we told him we were investigating and returning. * * *"

On February 8, 1918, he acknowledged receipt of this letter of February 7, 1918, and stated:

"I am returning copies of telegrams from complaint. An investigation will be made by this office and you will be advised result."

And in response to the letter after investigation the chief clerk wrote the following:

"Form 5193.  Railway Mail Service, Office of Chief Clerk.
    "Birmingham, Ala. Mar. 1, 1918.
"Mr. W. S. Dunston, Circulation Mgr., Birmingham News, Birmingham, Ala.
    "Referring to your complaint of Elgin Johnson at Wellington, Ala., on Feb. 6th, 125 papers short.
    "Investigation with the clerk on duty on Atlanta, Rock & Birm. Train 12, on date indicated, shows that he carried them by destination, and severe disciplinary action has been taken with him for the irregularity.
    "Please bear in mind, he made no report of the irregularity and did not do so in the first letter, but the evidence was so conclusive he finally admitted responsibility.
                    "L. Poole, Chief Clerk."

The chief clerk on February 19, 1918, reported to the defendant by letter that the train left Birmingham for Atlanta on February 5th, at 3:52 p. m., one hour and twenty-two minutes late, arriving at Wellington at 10:26 p. m., about five hours late; the automobile messenger to Anniston, tired of waiting for the papers on the delayed train, returned to Anniston; the papers of defendant were put off the train at Wellington, and the defendant's auto messenger received them the next day, concluding, "There was no irregularity." This was the train on which the plaintiff was the mail clerk.

[3] These telegrams and letters introduced in evidence shed light on whether the letter of February 7th refers to plaintiff or the mail clerk on the train of February 6th. The letters objected to were written by Leonard Poole, plaintiff's witness, to the defendant on the subject-matter of this suit, and were signed by him. He was cross-examined as to them, and the letters explained and shed light on the testimony of the witness on direct examination by plaintiff; he was the person to whom the complaint was made by defendant. Therefore the court did not err in admitting them in evidence. 6 Michie, Dig. 68, § 67 (1); section 3746, Code 1907; Chambers v. Ringstaff, 69 Ala. 140.

No name is mentioned in the letter. Both telegrams accompany the letter, but only one is referred to, as follows: "Return this telegram." Which one does it mean? The letter directs attention to the "most flagrant lack of service," and states, "I purpose filing my claim * * * for full papers short." Only one telegram refers to the papers short, which is the telegram of February 6th, at 6 p. m., stating "125 short tonight." The plaintiff was not on the mail train of that date. The letter also states, "I purpose these papers shall be paid for by the R. M. clerk at fault in failing to make this delivery." What delivery? Did it mean the "125 short tonight"?

[4] The letter of February 7th, on which the suit is founded, must be read and construed in connection with the two telegrams attached to it, and in the light of the surrounding circumstances, to determine its true meaning and intent. When so read, it is indefinite and uncertain whether the defendant in this letter was referring to the mail clerk, plaintiff, on the train of February 5th, or the mail clerk on the train of February 6th, a different person, or the service generally. Under the conflicting theories and inferences that could be reasonably drawn from the evidence, the letter and telegrams, the court properly left it for the jury to decide whether the letter was written "of and concerning the plaintiff," the mail clerk on the train of February 5th, or "of and concerning" the mail clerk on the train of February 6th, or the train service generally. Chambers v. Ringstaff, 69 Ala. 140.

[5] The following charge was requested by plaintiff, and refused by the court:

"The court instructs the jury that under the evidence in this case the publication complained of was libelous per se."

It was correctly refused, because it was misleading and not intelligible, and was calculated to mislead the jury even if the letter, per se, were libelous, which we need not decide. If the court had given the charge the jury would naturally have inferred from it that the court meant the letter was libelous as to the plaintiff, when under the conflicting evidence it was the province of the jury to decide whether it was libelous as to plaintiff, or the mail clerk on train of February 6, 1918. The charge refers to publication, not to the letter and its publication; the meaning of the charge is not clear. The complaint refers to three writings, a letter, telegram, and "complaint of delayed papers." To which does the charge refer? Could the jury determine by referring to the complaint? The meaning of the charge is not clear, definite, and certain.

[6] The general affirmative charges, numbered 1 and "B," with hypothesis, requested by plaintiff, were properly refused by the court. There was evidence from which the jury could reasonably infer the letter of February 7, 1918, was written of and concerning the mailing clerk on the train of February 6, 1918, and not of and concerning the plaintiff. This was a material matter in issue in the case, and the evidence thereon was in conflict. These charges should not be given when the evidence is in conflict as to a material matter in issue by positive proof, or by reasonable inferences that may be drawn therefrom. McMillan v. Aiken, 205 Ala. 35, h. n. 9–11. 88 South. 135.

The following charge was properly refused by the court:

"If the jury believe from all the evidence that the plaintiff in this cause was the railway mail clerk on train number 12, on the Atlanta, Rockmart and Birmingham Train on February 5th, 1918, then I charge you gentlemen of the jury that the publication complained of is libelous of the plaintiff and the law presumes that his sensibilities were wounded and that said publication inflicted upon plaintiff substantial mental suffering."

This was in effect the general affirmative charge in favor of plaintiff, as the plaintiff was the mail clerk on the train of February 5th. In this there was no conflict in the evidence. However, there was evidence tending to show the letter was not written "of and concerning the plaintiff," and that it was written of and concerning the mail clerk on the train of February 6, 1918. This charge improperly took that question from the consideration of the jury.

[7] Charges "F," "G," and "E" were separately requested by the defendant, and each given by the court. These charges were properly given by the court. The complaint avers the letter was written "of and concerning the plaintiff," and proof of this was necessary before plaintiff would be entitled to recover. The proof on this material issue was in conflict, as hereinbefore shown, and if plaintiff failed in this proof he was not entitled to recover. These charges instructed the jury the plaintiff could not recover if they believed from the evidence the letter was not directed against plaintiff, or was not written of and concerning plaintiff. Each charge correctly states the law applicable to the evidence in the case on that subject.

We find no reversible error in the record, and the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.